**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MELANIE STACEL, | ) | |
| | ) | Case No. 08-CV-1143 |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S**
**MOTION TO STAY DISCOVERY**

**APPENDIX OF UNREPORTED AUTHORITY**

1. *Orlando Residence, Ltd. v. GP Credit Co., LLC*, No. 04-C-439, 2006 WL 2849866 (E.D. Wis. 2006)

2. *Cataldo v. City of Chicago*, No. 01C6665, 2002 WL 91903 (N.D. Ill. Jan. 24, 2002)

3. *Gandler v. Nazarov*, No. 94-CV-2272 (CSH), 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994)

4. *Cooper v. Harris*, Nos. 98 C 1623, 1999 WL 261742 (N.D. Ill. Apr. 13, 1999)

5. *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-03327, 2007 WL 2019591 (N.D. Cal. July 10, 2007)

# Tab 1

H
Orlando Residence, Ltd. v. GP Credit Co., LLC
E.D.Wis.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Wisconsin.
ORLANDO RESIDENCE, LTD, Plaintiff,
v.
GP CREDIT CO., LLC; Nashville Lodging Company; Kenneth E. Nelson; Susan B. Nelson; Hayvenhurst Pension & Profit Sharing Plan; Defendants.
GP Credit Co., LLC., Counterclaimant-Third Party Plaintiff,
v.
Orlando Residence LTD., Counterclaim Defendant, Orlando Residence General, Samuel A. Hardage, Third Party Defendants.
**No. 04-C-439.**

Sept. 29, 2006.

Eugene N. Bulso, Jr., Boult Cummings Connors & Berry PLC, Nashville, TN, for Plaintiff/Third Party Defendants/Counterclaim Defendant.
Gary A. Ahrens, Michael Best & Friedrich LLP, Milwaukee, WI, for Defendants/Counterclaimant-Third Party Plaintiff.

**DECISION AND ORDER**

RUDOLPH T. RANDA, Chief Judge.

***Background***

*1 Plaintiff Orlando Residence, Ltd. ("Orlando Residence") filed this action against defendants GP Credit Co., L.L.C., ("GP Credit"), Kenneth Nelson ("Nelson"), Susan B. Nelson ("Susan N."),-Nelson's wife-and Hayvenhurst Pension & Profit Sharing Plan ("Hayvenhurst"), (collectively "Original Defendants") in the Tennessee Chancery Court for Davidson County. The Original Defendants removed the action to the United States District Court for the Middle District of Tennessee ("Tennessee District Court") relying upon 28 U.S.C. § 1332, which affords subject matter jurisdiction over civil actions in which the plaintiffs and the defendants are citizens of different states and the plaintiffs seek damages in excess of $75,000, exclusive of interest and costs.

Subsequently, upon the motion of the Original Defendants, the action was transferred to this district pursuant to 28 U.S.C. § 1404(a). The action was randomly assigned to this Court. Orlando Residence filed an amended complaint ("complaint") on November 4, 2004, which (among other changes) added Nashville Lodging Company ("Nashville Lodging") as a defendant. (The five defendants named in the amended complaint are referred to collectively as "Defendants.")

This action is a sequel to *GP Credit Co., L.L.C. v. Orlando Residence, Ltd.,* No. 01-C-0693 (E.D.Wis.)(*GP Credit I* ), an action presided over by United State District Judge Lynn Adelman. The appeals court [FN1] upheld the court's determinations that pursuant to 28 U.S.C. § 1655 it had *in rem* jurisdiction over the res-an action brought by Nashville Lodging against an unrelated third party Metric Partners Growth Investors, Inc. ("Metric")-and that Orlando Residence had no lien on the "chose in action." [FN2]*GP Credit Co., LLC v. Orlando Residence, Ltd.,* 349 F.3d 976, 981-82 (7th Cir.2003). The appellate court also upheld the court's determination that GP Credit acquired clear title to the chose in action when, having foreclosed against Nashville Lodging, GP Credit purchased all of Nashville Lodging's property at the foreclosure sale. *Id.* at 982-83.

FN1. The appeals court noted that the primary jurisdiction issue arose in a context of "daunting complexity." *GP Credit Co.,* 349 F.3d at 978. A sense of the factual complexity is imparted by the appeals court's description of the context, which indicated was "ruthlessly" simplified:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Back in 1992, the defendant, Orlando, sued the Nashville Lodging Company (NLC) in a Tennessee state court in a dispute over a hotel. After a protracted proceeding, a judgment for $800,000 was entered in Orlando's favor in September 2000. The previous year NLC had granted a security interest to the plaintiff in the present case, GP Credit, in "any and all personal property" owned by NLC. (It had done that to secure a $1 million loan that it had obtained from GP Credit.) NLC's personal property included a lawsuit that it had brought against a company called Metric, coincidentally involving the same hotel as Orlando's suit against NLC. NLC's suit against Metric was and is pending in a Tennessee state court, which when GP Credit obtained its security interest had determined Metric's liability to be at least $5 million but had not, and still has not, rendered a final judgment, for reasons that are unclear. In May 2001, which is to say after Orlando had obtained its judgment against NLC in the Tennessee court, GP Credit, claiming that NLC had failed to repay the $1 million loan, foreclosed its security interest in NLC's personal property and at the foreclosure sale bought all that property, including, therefore, NLC's suit against Metric. Three months later, Orlando persuaded the Tennessee trial judge who had rendered judgment in its favor against NLC to appoint a receiver to collect and hold, pending the final resolution of the Metric suit, any proceeds of the suit that GP Credit, as NLC's successor in interest, might receive, so that there would be money available to satisfy Orlando's judgment. And by this time Orlando had registered the judgment in the county in which it had been rendered, served on NLC a writ of execution of the judgment, and moved under Tennessee's postjudgment collection statute to subject NLC's assets to satisfaction of the judgment, a motion that the Tennessee trial judge denied, however.

*Id.*

FN2."One form of intangible property is a 'chose in action,' which in its classic sense is a legal claim, that is, something on which an 'action' (a lawsuit) might be founded, such as a right to recover a debt."*Id.* at 980 (citations omitted).

***Claims in This Action***

In this action, Count I of Orlando Residence's amended complaint ("Complaint") entitled "Fraudulent Transfer," alleges that Nelson and Nashville Lodging engaged in fraudulent transfers to Susan N. and to GP Credit to avoid payment of Orlando Residence's judgment. Hayvenhurst, named as a member of GP Credit, is alleged to have knowingly participated in the fraudulent transfers. Count II, entitled "Alter Ego," requests that the Court pierce GP Credit's corporate veil so that Orlando Residence can execute upon GP Credit's assets to obtain satisfaction of Orlando Residence's judgment against Nelson and Nashville Lodging. Orlando Residence seeks compensatory and punitive damages.

GP Credit has a counterclaim and third-party complaint against Orlando Residence, Orlando Residence General ("Orlando Gen.") and Samuel A. Hardage ("Hardage"). GP Credit alleges claims for restitution (First Cause), slander of title (Second Cause), and intentional interference with prospective business relationship (Third Cause), and seeks declaratory and injunctive relief, restitution, and compensatory damages.

***Standing of Dissolved Partnership to Sue***

***2** The Court's March 8, 2006, Decision and Order

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

raised a jurisdictional question of standing stemming from Orlando Residence's allegation in its complaint that it is a "dissolved Florida limited partnership." (Decision and Order, 3.) (Docket No. 245.)Relying upon the third catch-all sentence of Rule 17(b) of the Federal Rules of Civil Procedure, which provides that the capacity of a partnership or other unincorporated association to sue or be sued is "determined by the law of the state in which the district court sits," the Court stated that since it sits in Wisconsin, the law of Wisconsin would govern the capacity of Orlando Residence to sue. (*Id.* at 1.) The Court directed Orlando Residence to provide a brief statement regarding Orlando Residence's capacity to sue and provided an opportunity for the Defendants to respond to that statement. (*Id.* at 4-5.)The parties complied.

Orlando Residence asserts that because the matter was transferred from the district court for the Middle District of Tennessee, pursuant 28 U.S.C. § 1404, the Court must look to the substantive law of the State of Tennessee as would a judge in the transferor court. (Orlando Residence's Br. Statement Regarding Standing, 3 (citing *Van Dusen v. Barrick,* 376 U.S. 612, 637 (1964); *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1127 (7th Cir.1993).) (Docket No. 246.)[FN3]

FN3. Because the Court's docket for this action includes a large number of documents, for ease of reference, the Court has included the docket number with its first citation to a document.

The Defendants do not contest Orlando Residence's standing to litigate this matter, but they do not concede that Orlando Residence is a limited partnership, dissolved or otherwise. (See Defs.' Resp. Pl.'s Br. Statement Regarding Standing, 1.) (Docket No. 248.)The Defendants indicate that there are at least two partnerships named Orlando Residence-one formed in 1982 and one formed in 1985. The Defendants outline the nature of these entities in two pages of their statement on standing (which also relies on briefs previously filed by the Defendants). The Defendants assert that the plaintiff in this action is the Orlando Residence partnership formed in 1985, which is a general partnership. The Defendants maintain that when the 1985 Orlando Residence partnership was formed all of its partners were residents of Kansas, the partners are currently residents of Florida, Kansas, and California, and there is no evidence that the 1985 Orlando Residence general partnership has been dissolved.

In addition, the Defendants do not agree that Tennessee law controls the question of Orlando Residence's ability to sue during its winding-up period stating that "one cannot chose the law of his liking by filing in a court which lacks jurisdiction."The Defendants rely on briefs filed by GP Credit regarding the choice of law analysis. (*See* Defs.' Resp. Pl.'s Br. Statement Regarding Standing, 5 n. 7 (citing GP Credit's Br. Supp. Mot. Partial S.J. Claims of Slander of Title and Interference with Prospective Contractual Relationship ("GP Credit's Br. Supp. Mot. Partial S.J."), 12-14 (Docket No. 162); GP Credit's Reply Supp. Partial S.J. on Claims of Slander of Title and Interference with Prospective Contractual Relationship ("GP Credit's Reply Supp. Partial S.J."), 4-5 (Docket No. 196); and GP Credit's Resp. Opp'n Orlando Residence's Mot. S.J. GP Credit's Countercl. Slander of Title & Interference with Prospective Contractual Relationship, 11-12 (Docket No. 142).) The Defendants contend that substantive Wisconsin law governs this action, because the transferring court lacked personal jurisdiction over the Original Defendants.

***3** In raising the issue of Orlando Residence's standing, the Court ventured into an area of apparent (if not actual) factual complexity and considerable divergence of opinion. The Defendants' argument that the plaintiff is not what it purports to be-a dissolved Florida limited partnership-is novel and interesting. However, at this juncture, the Court accepts the complaint's identification of the plaintiff-a dissolved Florida limited partnership.

Both Tennessee and Wisconsin have adopted the Revised Limited Partnership Act. Under Tenn.Code

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ann. § 61-2-901(a)(1) and Wis. Stat. § 179.81, the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners. At the time this action was commenced,FN4Fla. St. § 620.159(2) (2004) provided:

FN4. Effective January 1, 2006, Fla. Stat. § 620.159 was repealed by 2005 Fla. Laws, ch.2005-267, § 25, and Fla. Stat. § 620.1803 was added by 2005 Fla. Laws, ch.2005-267, § 17, effective January 1, 2006.

Upon dissolution of a limited partnership and until the filing of a certificate of cancellation, persons winding up the limited partnership's affairs may, in the name of, and for and on behalf of, the limited partnership, prosecute and defend suits, whether civil, criminal, or administrative, gradually settle and close the limited partnership's business, dispose of and convey the limited partnership's property, discharge the limited partnership's liabilities, and distribute to the partners any remaining assets of the limited partnership, all without affecting the liability of limited partners.

Therefore, at this juncture, the Court is satisfied that Orlando Residence has the requisite standing to litigate this action. *See In re Cochrane,* 273 B.R. 272, 276 (Bankr.M.D.Fla.2001).

### *Applicable Substantive Law*

However, the question of whether this Court should apply Tennessee or Wisconsin substantive law (including on the choice of law determination) is likely to persist in this action. Therefore, the Court has considered the arguments in GP Credit's briefs upon which the Defendants rely. The Defendants assert that the general choice of law rule of *Van Dusen* does not apply, unless the case was originally filed in a permissible forum.[FN5](GP Credit's Br. Supp. Mot. Partial S. J., 12-14 (citing *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir.1993); *Trierweiler v. Croxton & Trench Holding Co.,* 90 F.3d 1523, 1532 (10th Cir.1996); *Greehan v. Monahan,* 382 F.2d 111, 114 (7th Cir.1967)).) The Defendants maintain that they all objected to personal jurisdiction and that Orlando Residence never proved personal jurisdiction. Therefore, the Defendants assert that Wisconsin choice of law rules apply.

FN5.*Gonzalez v. Volvo of Am. Corp.,* 734 F.2d 1221 (7th Cir.1984), is also cited by the Defendants, but, that decision was "superceded" by a subsequent decision. *See Gonzalez v. Volvo of Am. Corp.,* 752 F.2d 295, 297 (7th Cir.1985); *See also Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir.1986) (stating that *Gonzalez,* 734 F.2d at 1221, was vacated.)

In its response, Orlando Residence concedes that the *Van Dusen* exception does not apply when a case has been transferred by a transferring court which lacked personal jurisdiction over the defendants. (See Orlando Residence's Reply Br. Supp. Mot. S.J., 4-5 .) (Docket No. 165.)However, Orlando Residence maintains that the exception does not apply because the case was transferred to this district pursuant to 28 U.S.C. § 1404(a), not 28 U.S.C. § 1406. Orlando Residence suggests that the Court should infer that the Tennessee district court found that it had personal jurisdiction. Invoking judicial estoppel, Orlando Residence asserts that the Original Defendants are precluded from changing their positions regarding personal jurisdiction because the Defendants moved for transfer under Section 1404(a) and argued in favor of the transfer motion that the question of personal jurisdiction "would become moot, as all the defendants concede that the transferee court, Wisconsin District Court, will have personal jurisdiction over them."(*Id.* at 5 (citing Bulso Decl. (Docket No. 166), Ex. 1 (Mem. Facts and Law Supp. Defs.' Mot. Transfer), 12).) Orlando Residence also maintains that, because GP Credit is trying to establish an exception to the *Van Dusen* rule, GP Credit has the burden of showing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the exception applies and it has not done so.

***4** *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir.1993), applicable to the transferring Tennessee district court, explains that a district court's authority to transfer venue is based on two statutes, 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a).Section 1404(a) permits a change of venue for the convenience of parties and witnesses. *Id.* However, a transfer under section 1404(a)may **not** be granted when the district court does not have personal jurisdiction over the defendants. *Id.* (citing *Martin v. Stokes,* 623 F.2d 469, 474 (6th Cir.1980) (emphasis added)).Section 1406(a) allows a district court to grant a change of venue when venue was improper in the original forum. *Pittock,* 8 F.3d at 329. Specifically, section 1406(a) provides that a district court with a case "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."*Id.* Unlike section 1404(a), however, section 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case. *Id.* (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463 (1962) (utilizing section 1406(a) to transfer a case where there was both improper venue and lack of personal jurisdiction in the transferor forum)).

The Tennessee district court transferred venue under Section 1404(a). (Order at 1 (M.D. Tenn. April 19, 2004) (Docket No. 28).) In its terse order, the Tennessee district court noted that under section 1404(a), a district court may transfer any civil action to any other district or division where it could have been brought. *Id.* The court held that the action was sufficiently related to *GP Credit I* such that the interests of justice warranted its transfer. *Id.*

The Tennessee district court's § 1404(a) transfer decision was controlled by *Martin v. Stokes,* 623 F.2d 469, 474 (6th Cir.1980) .[FN6]*Martin* holds that application of section 1404(a) is limited to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper. See also, 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 n. 12 (2d ed.1986).

FN6. GP Credit states "*Martin* was superseded by the passage of 28 U.S.C. § 1631 way back in 1982."(GP Credit's Reply Supp. Partial S.J., 4 (citing *Ross v. Colo. Outward Bound Sch. Inc.,* 822 F.2d 1524, 1527 (10th Cir.1987).) The Court's research places the conclusion in doubt. *Roman v. Ashcroft,* 340 F.3d 314, 328-29 n. 11(6th Cir.2004), followed *Ross***and,** as an alternative basis for its holding, cited *Martin.See Id.*

In their motion to transfer brief, the Original Defendants raised the fact that they had denied that the Tennessee district court had personal jurisdiction over them. (See Bulso Decl. (Docket No. 166), Ex. 1 (Mem. Facts and Law Supp. Defs.' Mot. Transfer), 12). But, neither the Original Defendants nor Orlando Residence mentioned *Martin* or its holding in their briefs. The transfer order did not cite *Martin* or any similar case nor did it explicitly address whether that court had personal jurisdiction over the Original Defendants. Orlando Residence suggests that this Court should conclude that, in granting the motion to transfer under section 1404(a), Judge Campbell implicitly found that court had personal jurisdiction over the Original Defendants. Without more of a foundation, such inference is not plausible.

***5** Orlando Residence also asserts that judicial estoppel precludes the Original Defendants from now raising the issue of personal jurisdiction. Judicial estoppel is an equitable concept designed to prevent perversion of the judicial system. *Allison v. Ticor Title Ins. Co,* 979 F.2d 1187, 1193 (7th Cir.1993).*See also New Hampshire v. Maine,* 532 U.S. 742, 749 (2001). Traditionally, judicial estoppel has been applied when a party prevails in one action and takes a contrary position in a later action. *See Allison,* 979 F.2d at 1193. However, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States Supreme Court has stated that judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument in another phase of the case."*Pegram v. Herdrich,* 530 U.S. 211, 217 n. 8 (2000).*See also In re Hovis,* 356 F.3d 820, 823 (7th Cir.2004). Although the judicial estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, several factors typically inform the decision whether to apply the doctrine in a particular case:

First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire,* 532 U.S. at 750-51 (citations and internal quotation marks omitted).*See also Jarrard v. CDI Telecomm., Inc.,* 408 F.3d 905, 914 (7th Cir.2005). The factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."*New Hampshire,* 532 U.S. at 751.

The Defendants have adopted a position in this Court that is clearly inconsistent with the position raised in the Tennessee district court. The Original Defendants asserted before the Tennessee district court that it lacked personal jurisdiction over them, this Court would have personal jurisdiction, and the Tennessee district court's lack of personal jurisdiction would be moot if the case was transferred here. Now, the Defendants argue that the issue is not moot and that this Court should find that the Tennessee district court did not have personal jurisdiction over them, and that, therefore, the exception to *Van Dusen* applies and this Court must apply Wisconsin substantive law. The Original Defendants are contradicting their prior position on personal jurisdiction.

The Original Defendants would obtain an unfair advantage if this Court adopted the Defendants' position that Wisconsin law applies because Orlando Residence never established that the Tennessee district court had personal jurisdiction over them. Such a holding would deprive Orlando Residence of an opportunity to prove that the Tennessee district court had personal jurisdiction over the Original Defendants. By prohibiting the Original Defendants from changing positions according to the exigencies of the moment, the integrity of the judicial process will be preserved. *See New Hampshire,* 532 U.S. at 749-50. Therefore, judicial estoppel bars the Original Defendants from now arguing that the issue of personal jurisdiction is not moot. Accordingly, because this action was transferred based on the Original Defendants representation that the issue of personal jurisdiction would be moot, this Court will follow *Van Dusen* and apply the state substantive law which the Tennessee district court would have applied.[FN7]

FN7. However, this Court is "usually" free to decide the federal issues in the manner it views as correct without deferring to the interpretation of the transferor circuit. *See McMasters v. United States,* 260 F.3d 814, 819 (7th Cir.2001).

***Pending Motions***

***6** The factual underpinnings of the case are complex and the case has become mired in motions. This order addresses a number of pending motions.

The Original Defendants filed a summary judgment motion for dismissal of the complaint as barred by *res judicata* and collateral estoppel. (Docket No. 50.)They also maintain that Orlando Residence has no independent cause of action related to alter ego or piercing GP Credit's corporate veil.

Orlando Residence's response contends that the Original Defendants have overstated the rulings in the *GP Credit I* and have overlooked some basic principles of federal jurisprudence regarding the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prior action which involved *in rem,* not *in personam* jurisdiction. Orlando Residence also maintains that its current claims were not compulsory counterclaims under Federal Rule of Civil Procedure 13 in *GP Credit I.* In a supplemental response (Docket No. 68), Orlando Residence argues that in light of its amended complaint (filed within the deadline for filing amended pleadings as set by the Court's August 27, 2004, scheduling order), the Original Defendants' pending dispositive motions are moot.

The Original Defendants filed their motion for summary judgment on September 23, 2004. Orlando Residence filed its response to the summary judgment motion on October 26, 2004. On November 4, 2004, Orlando Residence filed its amended complaint. Orlando Residence filed its reply submissions on November 9, 2004.

The amended complaint supercedes the prior complaint. *See Duda v. Bd. of Ed. of Franklin Park Pub. Sch. Dist. No. 84,* 133 F.3d 1054, 1056 (7th Cir.1998). Thus, the Original Defendants' motion for summary judgment seeks dismissal of a complaint that has been superceded. (The contentions raised in the motion are raised by all defendants in their motion for partial summary judgment (Docket No. 151).) The Original Defendants' motion for summary judgment is denied as moot.

***The Original Defendants' Motion for a Stay of Discovery and the Defendants' Motion for Stay of Discovery***

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Defendants seek a stay of discovery by Orlando Residence on its complaint pending disposition of the Defendants' summary judgment motions for dismissal of the complaint and for dismissal of the complaint for failure to plead with particularity. (Docket No. 54[FN8] & part of Docket No. 75.)Orlando Residence opposes the motions relying upon paragraph five of the Court's August 27, 2004, scheduling order.

FN8. While presented in conjunction to the Original Defendants' motion for summary judgment, the motion pertains equally to the Defendants' motion for summary judgment, which in effect replaces the Original Defendants' summary judgment motion.

Rule 26(c) of the Federal Rules of Civil Procedure provides that:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

*7 (1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

Although both motions for a stay of discovery invoke Rule 26(c), neither motion is accompanied by a certification that the Original Defendants or Defendants have conferred or attempted to confer with Orlando Residence in an attempt to resolve their discovery dispute. Such a certificate is explicitly required by Rule 26(c).*See also* Civil L.R. 37.1 (E.D.Wis.). Motions that fail to meet the requirements of Civil L.R. 37.1 are summarily dismissed, although they may be refiled if a party shows compliance with the rules or satisfactorily explains the previous failure to comply. *See United States v. Molinaro,* 683 F.Supp. 205, 209 (E.D.Wis.1988) (addressing Local Rule 6.02 (E.D.Wis.); prior version of Civil L.R. 37.1). Since neither motion is accompanied by the required certification, the Court would be well within its discretion to deny the motions. However, from review of the discovery-re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lated motions in this matter it is obvious that the denial of the motions would be an exercise in formalism. The Court will address the motions for stay, but cautions the parties that strict adherence to the rules will be expected, in the future.

Paragraph five of the Court's scheduling order FN9 does not preclude a stay of discovery. "Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."*Gettings v. Building Laborers Local 310 Fringe Benefits Fund,* 349 F.3d 300, 304 (6th Cir.2003). Limitations on pretrial discovery are appropriate where claims may be dismissed "based on legal determinations that could not have been altered by any further discovery."*Id.* (quoting *Muzquiz v. W.A. Foote Memorial Hosp ., Inc.,* 70 F.3d 422, 430 (6th Cir.1995)).*See also Builders Assoc. v. Chicago,* 170 F.R.D. 425, 437 (N.D.Ill.1996) (collecting cases). A court may also stay discovery while addressing a motion to dismiss for failure to state a claim. *See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 935 (2nd Cir.1998).

> FN9. Paragraph five of the Scheduling Order states:
>
> > All requests for discovery shall be served by a date sufficiently early so that all discovery in this case can be completed no later than August 12, 2005. Neither the pendency of motions nor settlement discussions shall affect any of the dates set in this action, and neither shall justify delays in the taking of discovery.
>
> > (Court's August 27, 2004, Scheduling Order, 2.) (Docket No. 38.)

The Defendants' summary judgment motion (Docket No. 151) relies on, among other contentions, *res judicata* and collateral estoppel based upon the litigation in *GP Credit I.* The resolution of the issues related to those doctrines are legal determinations, and would not be impacted by further discovery.

Extensive litigation has preceded this action and discovery is time-consuming and costly to the parties. If Orlando Residence's claims are barred by the prior litigation in *GP Credit I,* extensive discovery and associated costs may be avoided. Therefore, the Defendants have shown good cause for a stay of discovery by Orlando Residence on its complaint until resolution of these summary judgment issues. Likewise, a stay of discovery pending resolution of the Defendants' motion to dismiss is appropriate. Therefore, the Defendants' motions for a stay of discovery by Orlando Residence on its complaint (Docket No. 54 & part of Docket No. 75) are granted until these issues are resolved. *See id.*

***Orlando Residence's Motion to Compel-Answers to Interrogatories & Requests for Production***

***8** Orlando Residence filed a motion to compel GP Credit, Susan N., and Hayvenhurst to respond to its first set of interrogatories and requests for production of documents. (Docket No. 86.)The motion is accompanied by a statement as required by Civil Local Rule 37.1, that Orlando Residence attempted, in good faith, to resolve the discovery dispute with the Defendants. (*See* Orlando Residence's Certificate Compliance Civil L.R. 37.1.) (Docket No. 88.)Orlando Residence states that the Defendants have failed to provide most of the requested information on the basis that: (1)"the judgment in E.D. Case No.01-C-693" decided the issues presented, and (2) "the complaint fails to plead fraud with particularity."(Mem. Law Supp. Pl.'s Mot. Compel, 2.) (Docket No. 87.)

The Defendants oppose the motion as being redundant because of their motions for a stay. (Defs.' Br. Opposing Pl.'s Mot. Compel, 1 .) (Docket No. 96.)They also indicate that the Court should stay discovery because they have moved to dismiss this action based on its preclusion by *GP Credit I.* Furthermore, even though Orlando Residence has filed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

an amended complaint, it has failed, as argued in the Defendants' motion to dismiss, to plead fraud with particularity.

Because, the Court has stayed Orlando Residence's requests for discovery on its complaint pending resolution of the issues of *res judicata,* collateral estoppel, and failure to plead fraud with particularity, Orlando Residence's motion to compel is denied.

***Orlando Residence's Motion to Compel Regarding Nelson's Deposition***

Pursuant to Fed.R.Civ.P. 37, Orlando Residence requests an order compelling Nelson to reappear for his deposition and awarding $2,035.65 [FN10] in expenses against Nelson's counsel. (Docket No. 135.)Orlando Residence argues that at Nelson's March 30, 2005, deposition, his attorney instructed Nelson not to answer any questions regarding Orlando Residence's claims in this action. The transcript of Nelson's deposition is attached to the motion.

FN10. By its original motion, Orlando Residence sought a total award of $1,298.15 in fees and expenses. (Orlando Residence's Mot. Compel and Award Fees and Expenses, 1 and Attach. Bulso Decl. I ("Bulso Decl. I") ¶¶ 8-10.) (Docket No. 135.)The claimed fees were $737.00 (2.5 hours spent on the initial motion to compel submissions multiplied by the standard and customary $295.00 hourly rate of counsel) and the claimed expenses were based on the $161.25 cost for the videographer and the court reporter for Nelson's deposition and $499.40 cost of additional airfare for Orlando Residence's counsel to take an earlier airplane flight due to the termination of Nelson's deposition. The expenses total $660.65.

In its reply memorandum, Orlando Residence indicates that the total award sought, with an additional 2.5 hours spent on the reply brief at counsel's $295.00 standard and customary hourly rate ($737.50 in fees), is $2,035.65. (Reply Mem. Supp. Mot. Compel, 4.) (Docket No. 168.);(Bulso Decl. II ¶ 2.) (Docket No. 169.)The $2,035.65 award sought consists of $1,475.00 in fees and $560.65 in expenses. (Bulso Decl. II ¶ 2.) (Either Orlando Residence intentionally seeks a lesser amount of expenses than incurred or calculated its expenses incorrectly).

Briefly described, Orlando Residence states that it produced its Rule 30(b)(6) designee in Milwaukee for deposition only because it could take Nelson's deposition during the same trip.[FN11](Bulso Decl. I ¶ 6.) The Defendants took their Rule 30(b)(6) deposition of Orlando Residence's designee on March 29, 2005. (*Id.* ¶ 7.) Orlando Residence was to take Nelson's deposition on March 30, 2005. (*Id.*) But, when counsel for Orlando Residence began to ask questions about the amended complaint, he was told that Nelson would not answer questions about the claims of the amended complaint. (*Id.*) Nelson relied on the pending motion for a protective order. (Nelson Dep. 10-18.) Nelson's deposition was convened at 8:58 a.m. and ended at 9:29 a.m. (*Id.* at 1, 18.)Counsel for Orlando Residence telephoned the Court in an attempt to resolve the discovery dispute. (Bulso Decl. I ¶ 7.) The Courtroom Deputy advised him that the Court was not available and would not return until Monday, April 4, 2005.(*Id.*)

FN11. The Defendants cite *Undraitis v. Luka,* 142 F.R.D. 675, 676 (N.D.Ind.1992) as indicating that as the plaintiff, Orlando Residence was required to come to Milwaukee to be deposed. The general rule is that a plaintiff may be required to attend a deposition in the district where the case was filed, but a defendant may insist upon being deposed in the district where he resides. *Id.* This general principal is based

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> upon the theory that the plaintiff has chosen the forum voluntarily and should expect to appear for any legal proceedings, but that the defendant is an involuntary participant. *Id.* (citing 8 Wright & Miller, *Federal Practice and Procedure,* § 2112at p. 409;*Farquhar v. Shelden,* 116 F.R.D. 70, 72 (E.D.Mich.1987); and *Wis. Real Estate Inv. Trust v. Weinstein,* 530 F.Supp. 1249, 1253 (E.D.Wis.1982).)
>
> However, the principal arises from a plaintiff's selection of the forum. *See*8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure,* § 2112 (2d ed.1994). Given that the case was transferred to this district pursuant to § 1404 and Orlando Residence did not select this forum, the argument is of "lessened persuasiveness." *Id.*Federal Rule of Civil Procedure 26(c)(2) permits a district court to regulate discovery by imposing "specified terms and conditions, including a designation of the time and place."It would have been within the Court's discretion to determine where the Rule 30(b)(6) deposition should be conducted.

*9 In opposition, the Defendants shift the focus. The Defendants attack Orlando Residence for filing the motion, inadequately preparing its witness for the Rule 30(b)(6) deposition, and for filing its fraudulent transfer claims. (Defs.' Resp. Opp'n Orlando Residence's Mot. Compel and Award Fees and Expenses Rule 37, 1-6.) (Docket No. 147.)The Defendants respond to the issues raised by Orlando Residence's motion, by relying on their pending motions for a stay of discovery pending disposition of their motion to dismiss for lack of particularity. (*Id.* at 2, 13.)They also argue that Nelson should not be compelled to appear for a second deposition and, if so, any award of expenses would not be justified. (*Id.* at 8.) They also assert that Orlando Residence seeks deposition costs which are not awardable under Rule 37(a)(4) of the Federal Rules of Civil Procedure. (*Id.* at 10.)

The Court has stayed discovery on Orlando Residence's complaint. Until that stay is lifted, Nelson is not required to submit to a deposition on the claims of Orlando Residence's complaint. Therefore, Orlando Residence's motion to compel is denied. It follows that its request for an award of fees and expenses pursuant to Rule 37(a)(4)(A) is also denied.

However, the Court finds the situation, as described by the motion to compel, troubling regarding the Defendants' counsel's misleading of counsel for Orlando Residence. While attorneys have a duty to act as zealous advocates, they are expected to conduct themselves in a civil and reasonable manner. *See* Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, http:// www.ca7.uscourts.gov/Rules/rules.htm# planVII. It appears that counsel for the Defendants mousetrapped opposing counsel. While availing himself of the advantageous March 29, 2004, deposition location, he surprised counsel for Orlando Residence the next day by refusing to allow a meaningful deposition of Nelson. The Defendants' motions for protective orders had been pending for months, and certainly, civility would direct that the Defendants apprise Orlando Residence that they intended to make Nelson only available for deposition on the counterclaims. Nelson's counsel could have also filed an expedited non-dispositive motion to quash or for a ruling on its pending motions for a stay (which sought relief under Rule 26(c) and therefore fall within the scope of motions for a protective order despite their title). The Court expects better conduct from counsel. The Defendants' response to the motion to compel also falls short of expectations, because it relies primarily on a counter attack upon Orlando Residence.

The Defendants cite the first sentence of the second paragraph of the advisory committee's notes to the 1993 Amendments to Rule 37(d)[FN12] which states: "The last sentence of this subdivision is revised to

clarify that it is the pendency of a motion for protective order that may be urged as an excuse for a violation of subdivision (d)."Fed.R.Civ.P. 37(d) advisory committee notes to 1993 amendment. But, they omit the remainder of the paragraph which states: "If a party's motion has been denied, the party cannot argue that its subsequent failure to comply would be justified. In this connection, it should be noted that the **filing of a** motion under Rule 26(c) is not self-executing-the relief authorized under that rule depends on obtaining the court's order to that effect."*Id.* (emphasis added.)

FN12.Rule 37(d) provides:

> If a party ... fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.... In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
>
> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

Fed.R.Civ.P. 37(d).

***10** The position of the Defendants' counsel at Nelson's deposition and in opposing the motion is in essence that the motions for stay were self-executing. The Defendants' position that their pending motion provided a basis for counsel's instruction that Nelson not answer questions at the time of the deposition does not reflect the general rule. *See*8 Wright, Miller & Marcus, *supra,* § 2035 ("At least with regard to depositions, the order should ordinarily be obtained before the date set for discovery."); *In re River Ridge Ranch, Inc.*, 347 B.R. 65, 69 (Bankr.S.D.Ohio 2006); *In re Lincoln N. Assoc. Ltd. P'ship,* 163 B.R. 403, 409 (Bankr.D.Mass.1993).

The Defendants cite *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266-67 (10th Cir.1995) in urging that the proper procedure is to apply for a pre-deposition protective order. *Dabney* involved a Resolution Trust Corporation ("RTC") witness who was instructed by counsel during a deposition not to answer any questions that involved work product. After the limited deposition, the defendants filed a motion to compel; the RTC responded with a motion for a protective order. In analyzing the RTC's improper conduct at the deposition, the court noted that counsel for the RTC admitted that they believed prior to the deposition, in reliance upon a district court's bench ruling in another RTC case, that the work product might foreclose certain lines of questioning and stated that "[t]hus, the proper procedure was to apply for to the court for a pre-deposition protective order, as was called for by the rules of civil procedure and was done in the [other RTC] case."*Id. Dabney* must be read in context-the court was discussing the RTC's improper blanket work product objection at the deposition, as opposed to seeking a court order when they anticipated the ground upon which they would object. The court did not say that a pending motion for a protective order may, necessarily, be relied upon at a deposition as a basis for a refusal to answer.

There may be instances where there has been no time to get a ruling prior to a deposition and the mere motion may be enough. However, to suggest that the pendency of a motion for a protective order is always sufficient grounds for refusal to answer is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

an overstatement. Furthermore, the strategy used by counsel for the Defendants in arranging the deposition is simply not the type of conduct encouraged by the courts within this judicial circuit.

***Orlando Residence's Rule 56(f) Motion for a Continuance***

Orlando Residence also has requested relief pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Orlando Residence seeks a continuance with respect to specific issues raised by the Defendants' summary judgment motion and has submitted an affidavit explaining why the additional discovery is necessary. *See Deere & Co. v. Ohio Gear*, No. 05-1990, --- F.3d, ---- 2006 WL 2473421, *4 (7th Cir. Aug. 29, 2006). Orlando Residence's request is properly supported and is reasonable.

***11** Relying upon its two pending motions to compel, Orlando Residence seeks a continuance of the Defendants' motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Docket No. 185). Orlando Residence contends that, absent the Defendants' discovery responses with regard to its fraudulent transfer claim, it cannot adequately brief issues raised by the Defendants' partial summary judgment motion (Docket No. 151) regarding the value of assets transferred, when Orlando Residence's causes of action accrued, and to what extent the statutes of limitations (claimed to be applicable by GP Credit), may be tolled. Orlando Residence has submitted an affidavit of counsel in support of its Rule 56(f) motion.

Orlando Residence's Rule 56(f) motion (Docket No. 151) is granted to the following extent. If the Defendants do not prevail on the *res judicata* or collateral estoppel issues raised by their summary judgment motion, the Court will allow Orlando Residence to conduct discovery which is likely to lead to the discovery of admissible evidence regarding the accrual of its causes of action, any tolling of the statute(s) of limitations and the value of transfer of assets. The Court will also allow Orlando Residence to supplement its summary judgment response before the Court addresses the remaining issues presented by the Defendants' summary judgment motion.

***GP Credit's Motion for Entry of Judgment***

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, GP Credit seeks the entry of judgment (Docket No. 236) on that portion of its first supplemented counterclaim (Docket No. 139) which relates to the slander of title case bond in the amount of $150,000.

Although Orlando Residence filed a reply to GP Credit's original counterclaim and cross motions for summary judgment are pending, Orlando Residence did not file a reply to the first supplemented counterclaim. However, the Court did not order Orlando Residence to do so. *See*Fed.R.Civ.P. 15(d). Therefore, Orlando Residence is not in default and GP Credit is not in the proper posture to obtain default judgment. Therefore, GP Credit's motion for entry of judgment is denied. (Docket No. 236).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Original Defendants' motion for summary judgment dismissing the complaint (Docket No. 50) is **DENIED,** as moot;

The Original Defendants' and the Defendants' motions to stay discovery by Orlando Residence on its complaint (Docket No. 54 & part of Docket No. 75), are **GRANTED** until resolution of the Defendants' motion for partial summary judgment on the grounds of *res judicata* and collateral estoppel and their motion to dismiss for lack of particularity;

Orlando Residence's motion to compel (Docket No. 86) is **DENIED;**

Orlando Residence's motion to compel and for an award of fees and expenses (Docket No. 135) is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**DENIED.**

Orlando Residence's motion for continuance of the Defendants' motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Docket No. 185), is **GRANTED** to the following extent. If the Defendants do not prevail on their claims of *res judicata* or collateral estoppel, before resolving the remaining issues presented by the Defendants' summary judgment motion, the Court will allow Orlando Residence to conduct discovery which is likely to lead to the discovery of evidence relevant to the statute(s) of limitations, issues of tolling of the statute(s) of limitations, and the value of transferred assets. Orlando Residence will also be allowed to supplement its summary judgment response before the Court addresses the remaining issues presented by the Defendants' summary judgment motion; and,

***12** GP Credit's motion for judgment (Docket No. 236) is **DENIED.**

E.D.Wis.,2006.
Orlando Residence, Ltd. v. GP Credit Co., LLC
Slip Copy, 2006 WL 2849866 (E.D.Wis.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab 2

Cataldo v. City of Chicago
N.D.Ill.,2002.
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Joseph P. CATALDO, Plaintiff,
v.
THE CITY OF CHICAGO, Defendant.
**No. 01 C 6665.**

Jan. 24, 2002.

MEMORANDUM OPINION AND ORDER

MASON, Magistrate J.

*1 This case was brought by Officer Joseph Cataldo, a police officer for defendant City of Chicago ("City"), alleging that the City violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U .S.C. § 12131*et. seq.* and § 12101 and the Rehabilitation Act of 1973, 29 U.S.C. § 794, by refusing to place him in a convalescent or limited duty position because he uses a wheelchair. The City states that a written police department policy precludes any officer who uses a visible supporting device such as a wheelchair or cane from serving in a limited duty position. Cataldo contends that this entire policy violates the ADA and the Rehabilitation Act because, *inter alia,* it precludes individuals who are able to perform all requirements of a limited duty position from continuing to work as police officers. After filing an amended complaint, Cataldo sought administrative leave from the City because he was unable to work even in a limited duty position. The City has filed a motion to dismiss the amended complaint in the District Court, arguing that Cataldo is not a qualified individual with a disability entitled to protection under the ADA or the Rehabilitation Act because he cannot work at all.

The City has brought a motion to stay all discovery in this case until after the District Court decides the pending motion to dismiss. Plaintiff has agreed to stay all depositions until after such a ruling, but argues that defendant should be ordered to produce portions of the medical files for all police officers currently on convalescent or limited duty, approximately 536 individuals.[FN1]Plaintiff has agreed to receive these documents with all personally identifying information redacted. Defendant protests that producing the requested documents would require locating them within each file, copying them for review by City attorneys, and then making a second copy to be redacted by a City paralegal, time-consuming and costly steps that will be unnecessary if the City succeeds on its motion to dismiss.

FN1. Plaintiff seeks copies of the most recent limited/convalescent duty status form ("LCD form") in each file as well as the accompanying physicians' letters and reports.

In addition to arguing for a stay because of the pending motion to dismiss, the City also argues that the requested documents are not relevant at all, or at least that their relevancy cannot be determined until after the motion to dismiss is decided. When Cataldo first filed this action, he sought a preliminary injunction requiring the City to retain him on limited duty status. The parties immediately entered into an expedited discovery schedule in preparation for a preliminary injunction hearing, during which the City segregated some 200 limited duty files for production after the parties agreed to a protective order. Before a protective order could be entered, Cataldo withdrew his motion for preliminary injunction in light of the fact that he was seeking administrative leave, and also informed the City that they could produce the requested medical files in redacted form, making a protective order unnecessary. However, the City now objects to the relevancy of the files at all since Cataldo is not currently on limited or convalescent duty status.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***2** We will not decide the City's relevancy argument at this time since doing so would require us to examine the merits of the motion to dismiss. However, we do believe a stay is appropriate. Requiring the City to locate, copy and redact the documents when there is a legitimate possibility that the case could be dismissed would not be an efficient use of its resources, especially given the current procedural posture of the case. Since Cataldo has admitted that he is not currently able to work, even in a limited duty position, he will not be harmed by any delay caused by receiving the documents until after the motion to dismiss is decided. Cataldo's placement in a limited duty position is not dependent on the District Court deciding in his favor on the merits of the lawsuit since he is currently not capable of holding such a job even if he wins his case. Thus, the delay in producing the files that would ensue if the plaintiff both survives the motion to dismiss and demonstrates to the Court the relevance of the medical files will not prejudice his ability to get ultimate relief. If the District Court should decide in favor of Cataldo on the motion to dismiss and hold that the records it seeks are relevant, we are confident that the parties will be able to work together to set a schedule for production of the files. We therefore grant the City's motion to stay discovery until after the District Court decides the motion to dismiss. It is so ordered.

N.D.Ill.,2002.
Cataldo v. City of Chicago
Not Reported in F.Supp.2d, 2002 WL 91903 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab 3

**H**
Gandler v. Nazarov
S.D.N.Y.,1994.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Mark GANDLER and International Sports Advisors Co., Plaintiffs,
v.
Andrei NAZAROV, Defendant.
**No. 94 Civ. 2272 (CSH).**

Dec. 14, 1994.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, District Judge:
*1 Three issues in this breach of contract action are now before the Court: (1) Whether the law firm of Berkovich & McMenamin should be disqualified from representing plaintiffs; (2) Whether plaintiffs are entitled to Rule 11 sanctions based on defendant's motion for disqualification; and (3) Whether discovery should be stayed pending resolution of defendant's motion to dismiss for lack of personal jurisdiction. I will consider each of these issues in turn.

1. Law Firm Disqualification

The Court is presented with the issue of whether vicarious disqualification of a law firm is warranted when one of the firm's attorney's is disqualified under the advocate-witness rule.

Plaintiffs had previously been represented by Alexander Berkovich, a partner in the firm of Berkovich & McMenamin. The underlying action surrounds a contract allegedly entered into by the parties.

Plaintiff International Sports Advisors Co. ("ISA") is in the business of representing professional hockey players in the National Hockey League ("NHL"). Plaintiff Mark Gandler is a principal of ISA. In May of 1992, plaintiffs entered into a written Representation Agreement with defendant Andrei Nazarov, at the time a 17-year old Russian hockey player aspiring to play in the NHL in the United States. This Agreement provided that ISA would represent Nazarov in his attempts to secure employment in the NHL, in return for which Nazarov would pay ISA a commission.

In April of 1993, Nazarov informed ISA that he was terminating the Representation Agreement. Plaintiffs maintain that this attempted termination placed Nazarov in breach of the Representation Agreement, prompting them to institute the present suit. Nazarov contends that the contract is unenforceable, in whole or in part, because the terms of the contract were never adequately explained to him, he was never provided a Russian translation of the contract, and the terms of the contract are inherently unfair.

Of particular significance here is a dispute over the extent to which plaintiffs translated and explained the terms and meaning of the Representation Agreement to Nazarov. On May 15 and 16, 1992, Berkovich met with Nazarov and Nazarov's father to discuss the Representation Agreement. Berkovich maintains that his efforts at those meetings adequately conveyed to Nazarov the import of the various provisions of the Representation Agreement. Nazarov disputes the scope of the efforts that Berkovich says he made, and contends that they were entirely inadequate.

It is thus apparent that a key issue is what happened at those meetings in May of 1992. Aware of the centrality of this issue, this Court, on July 1, 1994, raised with counsel the possibility that Berkovich would need to serve as a witness at trial, and that this possibility might merit disqualification of Berkovich under the advocate-witness rule.

After allowing the parties an opportunity to present arguments on the issue, this Court issued an opinion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on July 27, 1994, finding that Berkovich should be disqualified as counsel. That ruling was grounded on Disciplinary Rule ("DR") 5-102(A), which reads:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on behalf of his own client, the lawyer shall withdraw as an advocate before the tribunal, except that the lawyer may continue as an advocate and may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)."

***2** Applying this Rule, this Court wrote:

"Berkovich was intimately involved in the negotiation and execution of the Representation Agreement. Absent his testimony, it will be impossible for the plaintiffs to explain or rebut defendant's testimony. *See MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1207 (S.D.N.Y.1981) (applying a "significantly useful" standard rather than a "necessary" standard). The mandatory direction of DR 5-102(A) requires that in those circumstances, an attorney be disqualified."

Following the disqualification of Berkovich, Paul McMenamin, Berkovich's law partner, informed the Court by letter that he would be substituting as counsel for plaintiffs.[FN1] By letter to the Court dated August 11, 1994, defendant argues that since Berkovich was disqualified, the lawyers in Berkovich's firm should be vicariously disqualified, and that McMenamin should therefore not be allowed to substitute as counsel. In its reply papers, plaintiff maintains that relatively recent revisions to the New York Code of Professional Responsibility dictate that Berkovich's firm should not be disqualified.

*Discussion*

Attorney disqualification and vicarious disqualification of an attorney's law firm are in the discretion of the court. *Kubin v. Miller,* 801 F.Supp. 1101 (S.D.N.Y.1992). Nonetheless, the cases are uniform in holding that pursuant to Disciplinary Rule 5-102(A) of the New York Code of Professional Responsibility (22 NYCRR 1200.21), an attorney's firm should not be disqualified simply because that attorney will testify on behalf of his client. *Talvy v. American Red Cross,* 1994 WL 593353 (N.Y.A.D. 1st Dep't 1994); *Tisby v. Buffalo General Hospital,* 1994 WL 522792 (W.D.N.Y.1994); *Kubin,* 801 F.Supp. at 1114; *Kaplan v. Maytex Mills, Inc.,* 590 N.Y.S.2d 136 (N.Y.A.D. 2nd Dep't 1992); *Minami International Corp. v. Clark,* 1991 WL 102464 (S.D.N.Y.1991); *Paretti v. Cavalier Label Company, Inc.,* 722 F.Supp. 985, 988-89 (S.D.N.Y.1989).

In its opposition papers, defendant cites a number of cases that reached an opposite result, holding that vicarious disqualification of a law firm follows after one of the firm's attorney's is disqualified as a witness. These cases, however, all predate 1990, before the New York Code of Professional Responsibility was revised to permit a law firm to continue representation even if one attorney in the firm is required to testify. *Kaplan,* 590 N.Y.S. at 137.[FN2]

Given that the cases cited by defendant are no longer good law, the only component of defendant's argument that might plausibly allow a finding in its favor is its contention that disqualification is in the discretion of the Court.[FN3] Indeed, defendant acknowledges that its cited cases predate the 1990 revisions to the disciplinary rules, but maintains that the policy reasons cited for the old rule should still guide the Court in its exercise of discretion.

While defendant is correct that this Court has the discretion to disqualify Berkovich's law firm, it has offered no reason why the Court, in exercising its discretion, should not be guided by the revised disciplinary rules. Vicarious disqualification of a law firm is discretionary because the New York Code of Professional Responsibility is not legally binding on the federal courts in New York. *See, e.g. United States v. Perlmutter,* 637 F.Supp. 1134, 1137

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(S.D.N.Y.1986). Nonetheless, the ethical guidelines contained in the New York Code of Professional Responsibility, and the cases applying those guidelines, are highly instructive to the Court in arriving at an equitable resolution of the disqualification issue.

***3** The 1990 revisions reflected a growing consensus that vicarious disqualification of a law firm should occur only rarely, and that the reasons traditionally stated for disqualifying the firm when one of its attorneys will testify were no longer compelling. *See, e.g., Paretti,* 772 F.Supp. at 988-89.[FN4] Undoubtedly, there is a clear public policy in preventing an individual attorney from being both trial counsel and witness. *See, e.g., Paretti,* 722 F.Supp. at 988.[FN5] As to the attorney's firm, however, the New York State Bar Association argued, in recommending the revision to the disciplinary rules at issue here, that "[t]he change is consistent with the public policy of avoiding confusion between the lawyer's role as advocate and witness without unduly interfering with the client's ability to be represented by counsel of the client's choice." *New York State Bar Ass'n, Report of the Special Committee to Consider Adoption of ABA Model Rules of Professional Conduct,* 21 (1984).

Given that those with an expertise in formulating the ethics of the profession feel that public policy is best served by not disqualifying a firm when one of its attorneys must serve as a party witness, it is wise for this Court to adopt that same view in reaching an equitable resolution of the present case. Indeed, as the cases cited earlier show, those federal courts that have considered the revisions have embraced them as well.

Therefore, defendant having offered no reason why the Court's discretion should be exercised in its favor, and the weight of authority being in favor of no vicarious disqualification in the present situation, defendant's motion to disqualify the firm of Berkovich & McMenamin is denied. McMenamin may therefore substitute as counsel for plaintiffs.

McMenamin has also moved to be admitted to practice before this Court pursuant to Local Rule 2(C) of the United States District Courts for the Southern District. He has submitted the required documentation, and his motion is granted.

2. Rule 11 Sanctions

McMenamin, in his letter opposing disqualification, asks the Court to impose Rule 11 sanctions upon defendant for making what he believes is a frivolous disqualification motion. It is this Court's policy to entertain Rule 11 motions only at the conclusion of the case. Therefore, McMenamin's request for Rule 11 sanctions is denied without prejudice and is freely renewable at the conclusion of the case.

3. Discovery

On July 5, 1994, this Court ordered that discovery in this case be stayed. Prior to the issuance of that Order, defendant had argued that a stay was warranted, since defendant had made a motion to dismiss for lack of personal jurisdiction, potentially obviating the need to engage in costly discovery. Plaintiffs opposed this motion, and expressed their belief that discovery should proceed expeditiously, since difficulties were perceived in finding an opportunity to depose defendant once the NHL season had begun.[FN6]

***4** The July 5 Order staying discovery, however, was not a ruling on whether discovery should be stayed pending adjudication of the motion to dismiss. Rather, the Court stayed discovery pending resolution of the motion to disqualify counsel. As this opinion holds, that motion is denied. Plaintiffs have thus moved to lift the stay and begin discovery.

It is well-settled that a district court has discretion to halt discovery pending its decision on a motion to dismiss. *Chrysler Capital Corporation v. Century Power Corp.,* 137 F.R.D. 209, 211 (S.D.N.Y.1991); *Transunion Corp. v. PepsiCo,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Inc.,* 811 F.2d 127, 130 (2d Cir.1987). Defendant's motion to dismiss based on lack of personal jurisdiction is potentially dispositive, and appears to be not unfounded in the law. In addition, plaintiffs have not presented any evidence to suggest that they will be unfairly prejudiced by a stay. Therefore, because the adjudication of the pending motion to dismiss might avoid the need for costly and time-consuming discovery, all discovery in this case is hereby stayed pending resolution of defendant's motion to dismiss.

The pending motion to dismiss is *sub judice,* and will be resolved in due course.

SO ORDERED.

FN1. McMenamin also applied for *pro hac vice* admission before this Court.

FN2. Prior to the revision, DR 5-102(A) read:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)." (emphasis added).

FN3. If Berkovich had been disqualified due to a conflict of interest, or if he were going to offer testimony adverse to his client, then disqualification of the firm might be warranted. As this Court's July 27, 1994, opinion made clear, however, Berkovich will be testifying, if at all, only on behalf of his client.

FN4. Indeed, the American Bar Association's Code of Professional Responsibility, as well as the Model Rules of Professional Conduct, both embody the principle that vicarious disqualification is no longer necessary when an individual attorney is disqualified as a necessary witness. *Kubin,* 801 F.Supp. at 1113-14.

FN5. "[The] cases explain that D.R. 5-102(A) is designed to avoid the public perception that the lawyer as witness is distorting the truth for the sake of a client, or is enhancing his own credibility as an advocate by taking an oath as a witness, and is also designed to deny opposing counsel the unfair and difficult task of cross-examining an adversary and impeaching the adversary's credibility." *Paretti,* 722 F.Supp. at 988.

FN6. A difficulty that, sadly, no longer seems present.

S.D.N.Y.,1994.
Gandler v. Nazarov
Not Reported in F.Supp., 1994 WL 702004 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab 4

Cooper v. Harris
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Edwin D. COOPER, Norman Gates, Plaintiff,
v.
Andrew HARRIS, Jay Sander, Robert Semrau, John Albrecht, Michael Skoumal, John Maslan, P.O. Lockard, P.O. Valera, P.O. Wetstein, P.O. Bottino, P.O. Mahoney, Metropolitan Area Narcotics Squad, Defendants.
**No. 98 C 1623, 98 C 1624.**

April 13, 1999.

MEMORANDUM OPINION

GRADY.

*1 Before the court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and defendants' motion to stay discovery. For the reasons explained below, we deny the motion to dismiss and lift the stay we had previously placed on discovery.

BACKGROUND

On March 18, 1998, plaintiffs Norman Gates and Edwin Cooper filed separate complaints against the named defendants under 42 U.S.C. § 1983. Those complaints have since been consolidated before this court. Most of the defendants are law enforcement officers who were associated with the Metropolitan Area Narcotics Squad ("MANS"), a drug enforcement agency established by the State of Illinois in Will County. MANS consists of police officers assigned from the departments of surrounding communities.

Plaintiffs complain that defendants bear responsibility for their unlawful arrests. According to their allegations, defendant Andrew Harris, a MANS informant, told the officer defendants that plaintiffs had purchased drugs from him. In addition, Harris created an audio recording purporting to document the purchases. Without directly witnessing any drug purchase, defendant police officers arrested plaintiffs, who subsequently spent almost nine months in custody.

Plaintiffs allege three constitutional violations. First, they allege that defendants illegally seized them based on unreliable information and subsequently covered up their mistake, resulting in a deprivation of plaintiffs' liberty. Second, plaintiffs allege that defendants conspired to detain them without reliable evidence and then failed to remedy the situation upon learning of their error. Finally, plaintiffs allege that defendants could have prevented the seizure and conspiracy but failed to do so.

On February 9, 1999, we denied defendants' motion to dismiss for improper service of process and failure to state a claim upon which relief can be granted. Defendants now move to dismiss on two grounds: qualified immunity and failure to state a claim upon which relief can be granted. Defendants also move for a stay pending the determination of qualified immunity. We granted that motion from the bench on February 23, 1999.

DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 294 (2d ed.1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir.1997); *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir.1996).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dismissal is appropriate only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)); *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir.), *cert. denied,* 117 S.Ct. 510 (1996).

I.

***2** The doctrine of qualified immunity is available to police officers who are sued for false arrest under § 1983. *Pierson v. Ray,* 386 U.S. 547, 557 (1967). Qualified immunity shields defendant officers from liability in a particular case where their conduct: (1) did not violate any clearly established rights and (2) was objectively reasonable. *Biddle v. Martin,* 992 F.2d 673, 675 (7th Cir.1993). As for the first prong, the law has clearly established a right to be free from arrest without probable cause. *Id.* at 675;*see also Malley v. Briggs,* 475 U.S. 335, 340-45 (1986).

Turning to the second prong, the defendants fail there as well, because we cannot find on the face of the complaint that defendants' conduct in arresting Cooper and Harris was objectively reasonable. That determination involves factual questions. *See Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Only in rare circumstances may we address such factual questions on a 12(b)(6) motion to dismiss. *Silva v. City of Chicago,* No. 94 C 7228, 1996 WL 535244, at *7 (N.D.Ill. Sept. 18, 1996) (citing *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir.1992)). Taking all of plaintiffs' allegations as true, which we must for the purposes of a motion to dismiss, we cannot find that defendants' conduct was objectively reasonable.

Defendants argue that plaintiff' allegations are conclusory, but we disagree. Plaintiffs have alleged "specific facts" that confronted defendants at the time they acted. *See McDonnell v. Cournia,* 990 F.2d 963, 968 (7th Cir.1993) (citation omitted). By tying defendant Harris' deception in this case to a pattern of such practices, plaintiffs have adequately pleaded a specific claim that the officer defendants had no probable cause.

Defendants concede that probable cause is determined by a "totality of the circumstances" test and that an informant's reliability and veracity are highly relevant factors in this determination. Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defendants' Memorandum") at 6 (citing *Illinois v. Gates,* 462 U.S. 213, 230-31 (1983)). They further suggest that this analysis "must include the factual and practical considerations of everyday life."*Id.* at 6. While the facts, when they come to light, may support the validity of their qualified immunity claim, it would be premature for us to decide that claim now.

II.

Defendants again move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The instant motion relies upon the same legal theories to justify dismissal that we addressed in our Memorandum Opinion of February 9, 1999.

In their previous motion, most of which involved service of process issues, defendants set forth very little argument supporting their 12(b)(6) theories. We addressed those arguments then. Now, defendants seek to take a second bite at the apple by presenting more elaborate and coherent versions of the same arguments they have previously made. We do not believe that we should encourage this unnecessary and costly duplication of effort. Our previous opinion adequately addresses defendants' challenges to plaintiffs' complaints, so we see no reason to repeat our reasoning here.

***3** Defendants do raise one novel argument-that we should extend the intracorporate conspiracy doctrine, usually applicable to cases arising under 42 U.S.C. § 1985, to the § 1983 claims here. The doctrine protects corporate managers from § 1985 liab-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ility where they committed the underlying acts within the scope of their employment. *See Travis v. Gary Community Mental Health Ctr., Inc.,* 921 F.2d 108, 111 (7th Cir.1990) ("intracorporate discussions are not 'conspiracies" '). The Seventh Circuit has not applied the doctrine to § 1983 claims, and the circuits have split on this question. *See Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1126-27 (10th Cir.1994). Nonetheless, judges in this district have extended the doctrine to § 1983 claims against certain types of municipal officers. *See, e.g., Doe v. Board of Educ. of Hononegah Community High Sch. Dist. No. 207,* 833 F.Supp. 1366, 1381-82 (N.D.Ill.1993) (public school administrators). Defendants do not cite any case involving allegations that a group of police officers conspired to violate a plaintiff's civil rights. Our own research reveals, however, that at least one judge of this court has addressed precisely this issue and held that the intracorporate conspiracy doctrine does not apply to § 1983 allegations against police officers. *Salto v. Mercado,* No. 96 C 7168, 1997 WL 222874, *1 (N.D.Ill. Apr. 24, 1997) (Zagel, J.); *but cf. Chavez v.. Illinois State Police,* No. 94 C 5307, 1996 WL 66136 (N.D.Ill. Feb. 13, 1996) (Manning, J.) (police department cannot conspire with itself when making department policy). We agree that the intracorporate conspiracy doctrine does not apply to "allegations that a number of officers took concerted action to work together to harm a single individual, a classic charge of conspiracy." *Salto,* 1997 WL 22874, at *1.

For the sake of clarity, however, we do note that officer negligence alone will not support a § 1983 claim. *See United States v. Reed,* 726 F.2d 339, 342 (7th Cir.1984). To the extent that plaintiffs allege that the officer defendants were negligent, their claims must fail. Contrary to defendants' assertion, however, plaintiffs do allege that the officer defendants knew that their informant was unreliable. Complaints ¶ 24. They do allege that the officer defendants entered into an agreement to violate plaintiffs' constitutional rights. *Id.* ¶ 28. If plaintiffs can prove these allegations, they will be entitled to relief.

CONCLUSION

For the foregoing reasons, we deny defendants' motion to dismiss. Because a determination of whether the officer defendants have qualified immunity will require further factual inquiry, we lift the stay on discovery that we imposed pending resolution of this motion. A status conference is set for June 15, 1999 at 9:30 a.m. to set a discovery schedule.

N.D.Ill.,1999.
Cooper v. Harris
Not Reported in F.Supp.2d, 1999 WL 261742 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab 5

H
Martinez v. Wells Fargo Bank, N.A.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
Armando and Alinda MARTINEZ, on behalf of themselves and a class of others similarly situated, Plaintiffs,
v.
WELLS FARGO BANK, N.A.; Wells Fargo Home Mortgage, Inc.; Wells Fargo Financial Services, Inc.; and Wells Fargo Real Estate Tax Services, LLC, Defendants.
**No. C-06-03327 RMW.**

July 10, 2007.

Jacquetta Bardacos, Ronald D. Packard, Von G. Packard, Timothy G. Blood, for Plaintiffs.
Robert Bader, William F. Sheehan, for Defendants.

ORDER DENYING PLAINTIFFS' REQUEST FOR DISCOVERY AND CONTINUANCE OF HEARING ON DEFENDANTS' MOTION TO DISMISS

RONALD M. WHYTE, United States District Judge.
*1 On June 7, 2007 defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., Wells Fargo Financial Services, Inc., and Wells Fargo Real Estate Tax Services, LLC (collectively, "Wells") filed a motion to dismiss counts two through four of plaintiffs' second amended complaint ("SAC"). Plaintiffs Armando and Alinda Martinez (together, the "Martinez's") filed a request to obtain discovery in order to oppose Wells's motion.[FN1]Plaintiffs also seek a continuance of the July 27, 2007 hearing for defendants' motion to dismiss pending completion of the requested discovery. Wells opposes plaintiffs' request. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court DENIES plaintiffs' request for discovery and continuance of the hearing on defendants' motion to dismiss pending discov- ery.

FN1. Plaintiffs filed an opposition to the motion to dismiss on July 6, 2007. The court does not in this order address the motion to dismiss.

At the June 1, 2007 case management conference, the court set the hearing date for defendants' motion to dismiss for July 27, 2007 and stayed discovery as to any factual issue. The parties dispute whether this court, by staying fact discovery in this action at the CMC, barred plaintiffs from requesting discovery in order to oppose defendants' motion to dismiss. The parties agree that at the CMC plaintiffs requested and the court considered the idea of permitting discovery at this stage of the proceeding. Defendants argue that, by staying discovery, the court essentially concluded that discovery was not appropriate prior to the resolution of defendants' motion to dismiss. Defendants submit that if discovery is needed, plaintiffs should simply explain why in their opposition to the motion and the court can decide the motion on the arguments presented. Plaintiffs, on the other hand, contend that although the court decided to stay discovery, plaintiffs are not otherwise barred from making a request for discovery in order to oppose defendants' motion. According to plaintiffs, such discovery would put the issue of preemption "to rest once and for all" and may yield information that is central to other aspects of the case.

As defendants argue, "the purpose of [Fed.R.Civ.P.] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."*See Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir.1987) (citation omitted). A motion pursuant to Fed.R.Civ.P. 12(b)(6) may be treated as one for summary judgment if matters out-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

side the pleadings are presented for the court's consideration. However, this is not the case here.[FN2]

> FN2. Specifically, plaintiffs seek to depose defendants and make document requests about Wells's decision making process for settlement fees and costs incurred in providing settlement services for the period from January 1, 1998 through the present. *See* Pls.' Mot. Discovery, Ex. A.

Plaintiffs support their request by arguing that the issue of whether the National Bank Act preempts their Cal. Bus. and Prof.Code Section 17200 claims is a factual inquiry and, therefore, defendants' motion to dismiss such claims on the basis that they are preempted cannot be resolved prior to discovery. Plaintiffs contend that the court's March 30, 2007 Order Granting Motion to Dismiss Counts Two through Six of First Amended Complaint ("March 30, 2007 Order") "found that conflict preemption under 12 C.F.R. § 7.4002 may exist if Wells Fargo met certain factual requirements."Pls.' Mot. Discovery at 1:13-14. Therefore, plaintiffs submit, they need limited discovery to address this specific factual issue.

***2** Plaintiffs read the court's March 30, 2007 Order too broadly. The court did not hold that the issue of conflict preemption turned on whether defendants meet certain factual requirements. In the March 30, 2007 Order, this court concluded that there is no field preemption by the National Bank Act, but that there is conflict preemption. *See* Mar. 30, 2007 Order at 10:15-19 (citing *Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 963 (9th Cir.2005) (holding that "states may regulate national banks where 'doing so does not prevent or significantly interfere with the national bank's exercise of its powers' ") (citation omitted)). Specifically, the court held that the National Bank Act granted national banks the express power to engage in real estate lending and that specific regulations issued by the Office of the Comptroller of the Currency ("OCC") authorized national banks to charge non-interest charges and fees. Therefore, plaintiffs' § 17200 claims, which allege that defendants' non-interest charges and fees in connection with its real estate lending operations violate § 17200, were preempted under the principle of conflict preemption. *See* Mar. 30, 2007 Order at 10:20-12:15.

Although the court also discussed that the OCC regulations set forth in 12 C.F.R. § 7.4002[FN3] provide that a bank is deemed to have established non-interest charges and fees in accordance with safe and sound banking principles if it employs a decision-making process through which it considers certain factors, the court did not hold that the application of conflict preemption turned on whether a bank has complied with these factors. As defendants argues, these factors are merely guidelines provided by the OCC to banks setting forth the criteria a bank should consider in setting non-interest charges and fees.

> FN3.Section 7.4002 provides that a national bank "may charge its customers non-interest charges and fees, including deposit account service charges" and that the determination of such charges and fees are "business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles."A national bank is deemed to establish such charges and fees in accordance with safe and sound banking principles if "the bank employs a decision-making process through which it considers the following factors:"
>
> (i) The cost incurred by the bank in providing the service;
>
> (ii) The deterrence of misuse by customers of banking services;
>
> (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(iv) The maintenance of the safety and soundness of the institution.

12 C.F.R. § 7.4002(b)(2).

Accordingly, the court concludes that discovery is not warranted for the purpose of opposing defendants' motion to dismiss. *See Rutman Wine Co.,* 829 F.2d at 738 (holding that "if the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility") (internal quotation marks and citation omitted).

**ORDER**

For the foregoing reasons, the court DENIES plaintiffs' request for discovery and continuance of the hearing on defendants' motion to dismiss pending discovery.

N.D.Cal.,2007.
Martinez v. Wells Fargo Bank, N.A.
Slip Copy, 2007 WL 2019591 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.