## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Melanie Stacel | |
| Plaintiff, | |
| v. | Case No. 08 C 1143 |
| Teva Pharmaceuticals USA, Inc. | Honorable Joan Gottschall |
| Defendant. | |

### SECOND AMENDED COMPLAINT

Now comes the Plaintiff, Melanie Stacel, hereinafter "Plaintiff," by and through her

attorney, Michael P. Cascino and complains of Defendant, Teva Pharmaceuticals USA, Inc., as

follows:

### JURISDICTION AND VENUE

1.    Plaintiff is an adult citizen and resident of the State of Illinois.

2.    Defendant Teva Pharmaceuticals USA, Inc., hereinafter referred to as "Teva

Pharmaceuticals," is a corporation which is incorporated in the State of Delaware and has

its principal place of business in North America, and at all time relevant to the allegations

contained herein was engaged in the business of testing, designing, manufacturing and

selling a drug commonly known as minocycline and/or minocycline-containing products,

hereinafter referred to as "minocycline drug" or "drug".

3.    Plaintiff was diagnosed with injury on August 25, 2005, and this complaint is properly

brought within the applicable statute of limitations.

4.    Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United States

Code, §1332.

**EXHIBIT**

**A**

5.    The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

6.    Venue is proper pursuant to Title 28, United States Code, §1391.

## GENERAL ALLEGATIONS

7.    Plaintiff took a generic form of the drug minocycline for treatment of acute acne beginning July 9, 2004 in a 100 mg/day dosage.

8.    As part of her treatment, from July 2004 forward, Plaintiff regularly took prescription minocycline for her acute acne.

9.    Plaintiff purchased and consumed minocycline products which were sold, manufactured, distributed, packaged, or otherwise placed into commerce in the State of Illinois by defendant Teva Pharmaceuticals.

10.    Plaintiff was ignorant of the dangerous nature of minocycline and of the nature of the risks incurred by ingesting minocycline-containing products, including developing drug-induced lupus.

11.    While taking minocycline, Plaintiff developed the disease commonly known as lupus.

12.    Plaintiff ceased taking minocycline on March 30, 2005.  Plaintiff was diagnosed with drug-induced lupus in September of 2005.

13.    As a direct and proximate result of the wrongful acts and/or omissions of Defendant, Plaintiff developed and was diagnosed as having drug-induced lupus.

14.    Plaintiff would not have ingested minocycline as described herein, or would have discontinued use, or would have used safer alternative methods, had Defendant disclosed the true health consequences, risks, and adverse events, including the increased incidence and risk of drug-induced lupus and other illnesses, caused by their drug.

2

Case 1:08-cv-01143     Document 17     Filed 03/28/2008     Page 3 of 8

15.    Plaintiff has suffered great pain, physical impairment, mental pain and anguish, economic

losses, medical expenses, and fear of death.

## COUNT I

## PRODUCTS LIABILITY - NEGLIGENCE

16.    Plaintiff reasserts and realleges the above jurisdiction, venue and general allegations with

respect to this claim.

17.    It was reasonably foreseeable by Defendant Teva Pharmaceuticals that Plaintiff and other

consumers would be ingesting Defendant's minocycline drug.

18.    Defendant Teva Pharmaceuticals participated in, authorized and directed the production

and promotion of minocycline products without sufficient disclosure that the drug use

was associated with cases of drug induced lupus.

19.    Defendant Teva Pharmaceuticals had a duty to exercise reasonable care in the promotion

of this drug for the safety of Plaintiff and others who were using Defendant's minocycline

products.

20.    At all times Defendant Teva Pharmaceuticals had a duty to comply with all Food and

Drug Administration ("FDA") regulations.

21.    Prior to, during, and after the time Defendant Teva Pharmaceuticals manufactured,

produced, processed, packaged, designed, distributed, and/or shipped the minocycline

products to which Plaintiff digested, Defendant knew, or in the exercise of ordinary or

reasonable care ought to have known, that consumption of its minocycline products cause

drug induced lupus.

22.    Notwithstanding the aforementioned duties, Defendant Teva Pharmaceuticals was

3

negligent by one or more of the following acts or omissions in that Defendant:

a.    Failed to adequately warn Plaintiff and/or others of the health hazards concerned
      with ingestion of minocycline;

b.    Failed to recommend and/or provide proper cautions and warnings to physicians,
      to ensure Plaintiff's and/or other's safety;

c.    Failed to warn Plaintiff and/or others of the danger and harm from consumption of
      minocycline;

d.    Failed to instruct Plaintiff or others including her physician in the side effects of
      the drug minocycline;

e.    Failed to follow FDA procedures concerning product letters of approval;

f.    Failed to advise Plaintiff, the public, and physicians when promoting this drug
      that a side effect was drug induced lupus;

g.    Failed to seek immediate changes on its label when it was aware of reported cases
      of drug induced lupus;

h.    Failed to inform AERS (Adverse Event Reporting System) of reported cases of
      drug induced lupus;

i.    Failed to post marketing advertisement to warn health care professionals and
      consumers of the potential adverse event of drug induced lupus;

j.    Failed to submit proposed label revisions to the FDA to include warnings for
      health care professionals and consumers of the potential for the adverse event of
      drug induced lupus;

k.    Deliberately and intentionally did not warn Plaintiff or similarly situated persons

4

that the drug minocycline was reported to have caused drug induced lupus.

23.   As a direct and proximate result of the acts and omissions of the Defendant Teva

Pharmaceuticals, Plaintiff was injured as described above.

### COUNT II

### COMMON LAW FRAUD AND MISREPRESENTATION

24.   Plaintiff realleges the above jurisdiction, venue and general allegations.

25.   Defendant Teva made false statements of material fact by not revealing to Plaintiff and

others including the public and her physician and/or the FDA of reported cases in which

the drug was reported to have caused what is commonly known as lupus.

26.   Defendant was careless in making such false statements of material fact to the public via

promotional activities, letters of approval to the FDA, labels attached to the prescription

for users, dissemination of information to physicians including Plaintiff's physician and

failures to ask the FDA to put complete information on the labels that users would be

fully informed as to what Defendant knew about the drug could causing lupus in certain

persons and by not revealing Defendant's full knowledge about cases of drug induced

lupus.

27.   The failure of Defendant to reveal full knowledge about this drug causing a lupus

condition to Plaintiff, the public and the FDA was intended to cause persons including

Plaintiff to purchase the drug.

28.   Plaintiff, in reliance of the truth of the statements concerning the drug's safety, took the

medication and continued to take the medication without knowledge that it was causing

drug induced lupus.

5

29.  Plaintiff, in reliance of the material omission and/or concealment by Defendant of its full knowledge about the drug being reported to cause drug induced lupus, took the drug.

30.  Defendant owed a duty to Plaintiff, the public, physicians and the FDA to fully disclose and competently disclose that this drug could cause lupus.

31.  As a direct and proximate cause of Defendant's misrepresentations, Plaintiff was injured in that she got lupus from the Defendant's drug.

## COUNT III

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

32.  Plaintiff realleges the jurisdiction, venue and general allegations.

33.  The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, provides statutory relief for persons like Plaintiff who have been injured including by drug sellers like Defendant herein.

34.  In violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Defendant committed deceptive acts and practices including:

   a.   Failed to tell Plaintiff, the public, physicians and the FDA that there were reported cases of this drug inducing lupus;

   b.   Concealed a material fact that certain persons would develop drug induced lupus;

   c.   Failed to adequately warn Plaintiff and/or others of the health hazards concerned with ingestion of minocycline;

   d.   Failed to recommend and/or provide proper cautions and warnings, to ensure Plaintiff's and/or other's safety;

   e.   Failed to warn Plaintiff and/or others of the danger and harm from consumption of

6

minocycline;

f.    Failed to instruct Plaintiff or others in the use of precautionary measures in

relation to minocycline;

g.    Failed to follow FDA procedures concerning product letters of approval;

h.    Failed to advise Plaintiff, the public, and physicians when promoting this drug

that a side effect was drug induced lupus;

i.    Failed to seek immediate changes on its label when it was aware of reported cases

of drug induced lupus;

j.    Failed to inform AERS (Adverse Event Reporting System) of reported cases of

drug induced lupus;

k.    Failed to post marketing advertisement to warn health care professionals and

consumers of the potential adverse event of drug induced lupus;

l.    Failed to submit proposed label revisions to the FDA to include warnings for

health care professionals and consumers of the potential for the adverse event of

drug induced lupus;

m.    Deliberately and intentionally did not warn Plaintiff or similarly situated persons

that the drug minocycline was reported to have caused drug induced lupus.

35.    Defendant intended that by not disclosing and/or concealing the material fact that there

were reported cases of drug induced lupus, physicians would prescribe the drug and the

public including Plaintiff would purchase the drug.

36.    The aforementioned deception occurred in the course of conduct involving trade or

commerce.

7

37.  Defendant's aforementioned deception was a proximate cause of Plaintiff's injury, namely her drug induced lupus.

## COUNT IV

## PUNITIVE DAMAGES

38.  Plaintiff realleges the above jurisdiction, venue and general allegations.

39.  That Defendant acted willfully and/or with such gross negligence as to indicate a wanton disregard for others' rights including Plaintiff herein in the aforementioned Defendant's conduct described in the above paragraphs.

40.  That Defendant continues to omit and conceal that the drug minocycline can cause drug induced lupus in certain individuals constitutes such gross negligence as to indicate a wanton disregard for others' rights including Plaintiff, the public, and the FDA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows: judgment against Defendant, Teva Pharmaceuticals USA, Inc., for compensatory and general damages in excess of $100,000 plus costs.


Dated this 28th day of March, 2008
Respectfully submitted,


s/ Michael P. Cascino

One of the Plaintiff's Attorneys
MICHAEL P. CASCINO
VAUGHAN CASCINO LAW OFFICES, LTD.
220 South Ashland Avenue
Chicago, Illinois 60607
312-944-0600
312-944-1870 fax

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Melanie Stacel, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 08 C 1143 |
| | ) | |
| Teva Pharmaceuticals USA, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION**

Plaintiff, Melanie Stacel, by her attorney, Michael P. Cascino of Vaughan Cascino Law

Offices, Ltd., pursuant to F.R.C.P. Rules 26 and 34, hereby propounds the following interrogatories

to be answered by defendant TEVA PHARMACEUTICALS USA, INC. within 30 days of

service.

**DEFINITIONS**

As used herein:

1.      "Document" shall mean any writing or any other tangible thing in the custody, possession,

        or control of the defendants -- whether printed, recorded, reproduced by any process, or

        written or produced by hand, including but not limited to, letters, reports, agreements, e-

        mails, communications, including correspondence, specifications, blueprints, contracts,

        subcontracts, reports, repair and maintenance records, telegrams, memoranda, summaries

        or records of telephone conversations, summaries or records of personal conversations or

        interviews, stenographic or handwritten notes, diaries, notebooks, worksheets, note

        charts, log books, forecasts, photographs, tape recording, computer disk files, computer

        printouts, models, statistical statements, production records, calendars, summaries,


EXHIBIT
B

minutes or records of meetings or conferences, expressions or statements of policy, list of persons attending meetings or conferences, opinions or reports of consultants, appraisals, records or summaries of negotiations, advertising materials, manuals, catalogs, sales materials, product lists, technical sheets, instructions, brochures, pamphlets, annual or other periodic reports, prospectuses, registrations, solicitations, receipts, purchase orders, bills, invoices, bills of lading, press releases, advertisements, circulars, trade letters, drafts of any document, revisions of drafts of any documents, invoices, receipts, marginal comments appearing on any document, contents of databases, and all other writings or print.

2.      "Injured person" means the person claiming injury.

3.      "Defendant" means the person or entity to which this discovery is directed.

4.      "Person" or "entity" means a natural person, firm, association, corporation, joint venture, partnership, proprietorship or any other legal entity or business enterprise, arrangement or organization, including but not limited to any individual(s) or agents, employees, representatives, corporate parent, subsidiary, predecessor, successor, affiliate, or other person acting, or purporting to act, on behalf of a defendant herein.

5.      "Identify" a "person" means list the name, last known phone number, address, and employer, and title or position with said employer, of a natural person, or the name, address, and phone number of any other legal entity, group, association, enterprise, or organization;

6.      "Identify" a "document" means the date on the document, the recipients and the authors, the title, the subject matter, document type, and the identity of the person presently having

possession.

7.    "Drug" means minocycline sold by defendant.

8.    "Identify" with respect to a "claim", "lawsuit" or "action", means the parties, tribunal, docket or file number, state, county and jurisdiction; name, address and telephone number of the claimant's or plaintiff's attorneys.

9.    "All" means everything, 100%.

10.   The term "investigations" refers to tests, epidemiological and other studies, research, development, or analysis, including all proposed, closed, incomplete or ongoing investigations.

11.   The singular shall include the plural, and the plural shall include the singular.

12.   The masculine, feminine, or neutral pronoun shall not exclude the other genders.

## PRIVILEGE

1.    Identify all documents for which privilege is claimed and state the basis for the claim.

## GENERAL INTERROGATORIES

1.    Identify all documents sent to the Food and Drug Administration ("FDA") by this defendant concerning the drug minocycline during the time period of 1992 to present.

2.    Identify all documents intended by this defendant to be attached to prescription bottles of the drug minocycline sold by this defendant for the time period of 1992 to present.

3.    Identify all documents sent by this defendant to physicians and pharmacies concerning the drug minocycline for the time period 1992 to present.

4.    Identify all reports of which this defendant is aware that were made to the FDA indicating that the drug minocycline has been reported to cause drug induced lupus.

3

5.   Identify all documents and information in this defendant's control and possession indicating that the drug minocycline was reported to cause any lupus-like conditions.

6.   Identify all documents in which this defendant ever requested to the FDA that the labeling of the drug minocycline be changed to reflect reported cases of lupus.

7.   Identify all documents given to Plaintiff's physicians, namely Dr. Steven W. Neubauer and Dr Saba Ahmed during the time period of 1992 through 2005.

8.   Identify all documents given to the Walgreens pharmacy concerning the drug during the period of 1992 through 2005.

9.   Identify all sales promotions and advertisements related to the drug minocycline by the defendant to physicians and pharmacies during the time period of 1992 through 2005.

10.   Identify the sales representative(s) of this defendant for Dr. Steven W. Neubauer, Dr. Saba Ahmed and Walgreens Pharmacies in Illinois for the time period of 1992 through 2005.

11.   Identify all documents received from the FDA by this defendant concerning the drug minocycline during the time period of 1992 through 2005.

12.   Identify all procedures taken by this defendant to inform users, the public, physicians and the FDA of any facts concerning the drug minocycline and lupus associated with use of the drug.

13.   Identify all investigations by this defendant into the side effects of the drug.

14.   Identify all drug approval letters between this defendant and the FDA concerning the drug minocycline for the time period of 1992 to 2005.

15.     Identify all persons of this defendant who made visits to Dr. Steven W. Neubauer and
Dr Saba Ahmed.

16.     Identify all claims filed against defendant with allegations concerning drug induced lupus.

17.     Identify all publications and literature provided by defendant in which advertisements for
the drug were made during the period of 1992 through 2005.

18.     Identify all persons to be named as corporate representative(s) with knowledge about the
subject matter of each of the interrogatories.

## REQUEST FOR PRODUCTION

1.      All documents related to each request in the Interrogatories.

Date: April 1, 2008

Respectfully submitted,

_Michael P. Cascino_

Michael P. Cascino


Michael P. Cascino
Vaughan Cascino Law Offices, Ltd.
220 S. Ashland Ave.
Chicago, IL 60607
Phone: (312) 944-0600

5

## CERTIFICATE OF SERVICE

I, Arlene J. Kaminski, a non-attorney, certify under penalties as provided under 28 U.S.C. Sec. 1746 that on April 1, 2008, I served a copy of the foregoing Plaintiff's Interrogatories and Request for Production by regular mail, proper postage prepaid, to the following:

Ameri Rose Giannotti
Pamela Reasor Hanebutt
Eimer Stahl Klevorn & Solberg, LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604

Glenn S. Kerner
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

Arlene J. Kaminski

Vaughan Cascino Law Offices
220 S. Ashland Ave.
Chicago, Illinois 60607
(312) 944-0600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Melanie Stacel,                           )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        Case No:  08 C 1143
                                          )
Teva Pharmaceuticals USA, Inc.,           )
                                          )
                    Defendant.            )

## PLAINTIFF'S FIRST REQUEST TO ADMIT
## TO DEFENDANT TEVA PHARMACEUTICALS USA, INC.

NOW COMES Plaintiff, Melanie Stacel, by her attorney, Michael P. Cascino of Cascino

Vaughan Law Offices, Ltd., pursuant to Federal Court Rule 36, and requests that defendant TEVA

PHARMACEUTICALS USA, INC. answer the following requests to admit within thirty (30)

days of service hereof.

As used herein "TEVA" refers to Teva Pharmaceuticals USA, Inc., the parent

corporation, its entities, and any of its successors or predecessors.  If more than one responding

party is named, refer to each responding party separately, not jointly.

1.      Admit or deny that TEVA sold minocycline during the years 2004 and 2005.

ANSWER:


2.      Admit or deny that TEVA did not provide any warnings on the label(s) for the drug

        minocycline about the drug causing drug induced lupus.

ANSWER:



3.   Admit or deny that TEVA had knowledge prior to July of 2004 that the drug minocycline

could cause drug induced lupus.

ANSWER:


4.   Admit or deny that TEVA prior to July of 2004 did not advise the Food and Drug

Administration of the knowledge that the drug minocycline could cause drug induced

lupus.

ANSWER:


Respectfully submitted,

One of Plaintiffs' Attorneys

Michael P. Cascino
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Ave.
Chicago, IL 60607
Phone: (312) 944-0600

## CERTIFICATE OF SERVICE

I, Arlene J. Kaminski, a non-attorney, certify under penalties as provided under 28 U.S.C. Sec. 1746 that on March 5, 2008, I served a copy of the foregoing Plaintiff's First Request to Admit to Defendant Teva Pharmaceuticals USA, Inc., by regular mail, proper postage prepaid, to the attorneys listed below:

> Pamela Hanebutt
> Ameri Giannotti
> Eimer Stahl Klevorn & Solberg LLP
> 224 South Michigan Avenue, Suite 1100
> Chicago, Illinois 60604

Arlene J. Kaminski

Cascino Vaughan Law Offices
220 S. Ashland Ave.
Chicago, Illinois 60607
(312) 944-0600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MELANIE STACEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TEVA PHARMACEUTICALS USA, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No. 08-CV-1143

Judge Joan B. Gottschall
Magistrate Judge Jeffrey Cole

### DEFENDANT TEVA PHARMACEUTICAL USA, INC.'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Teva Pharmaceuticals

USA, Inc., by its attorneys, hereby respectfully moves to dismiss Plaintiff's Second Amended

Complaint. Counts II and III of the Second Amended Complaint sound in fraud and Plaintiff has

failed to plead these causes of action with the requisite particularity. In addition, all of the

causes of action in the Second Amended Complaint fail to state a claim because they are

preempted by the Supremacy Clause of the United States Constitution and by federal law.

In further support of its motion, Teva Pharmaceuticals USA, Inc. submits the

accompanying memorandum of law.



EXHIBIT
D

Date:  May 2, 2008

TEVA PHARMACEUTICALS USA, INC.


By:____/s/ Ameri R. Giannotti_____
        One of Its Attorneys

Glenn S. Kerner
Joanne Gray
Yuliya Gertsberg
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800 (Telephone)
(212) 355-3333 (Facsimile)
gkerner@goodwinprocter.com
jgray@goodwinprocter.com
ygertsberg@goodwinprocter.com

Pamela R. Hanebutt
Ameri R. Giannotti
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL  60604
(312) 660-7600 (Telephone)
(312) 692-1718 (Facsimile)
phanebutt@eimerstahl.com
agiannotti@eimerstahl.com

*Attorneys for Defendant*
*Teva Pharmaceuticals USA, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MELANIE STACEL,                      ) | Case No. 08-CV-1143 |
|                                      ) | |
|        Plaintiff,              ) | Judge Joan B. Gottschall |
|                                      ) | Magistrate Judge Jeffrey Cole |
|     v.                            ) | |
|                                      ) | |
| TEVA PHARMACEUTICALS USA, INC.       ) | |
|                                      ) | |
|       Defendant.              ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

ARGUMENT ......................................................................................................2

I.     PLAINTIFF'S COMMON LAW FRAUD AND MISREPRESENTATION
       CLAIMS FAIL DUE TO INADEQUATE PLEADING UNDER FED. R. CIV. P.
       9(b)...........................................................................................................3

II.    PLAINTIFF'S CLAIMS UNDER THE ILLINOIS CONSUMER FRAUD AND
       DECEPTIVE BUSINESS PRACTICES ACT ALSO FAIL DUE TO
       INADEQUATE PLEADING UNDER FED. R. CIV. P. 9(b)................................5

III.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE
       SUPREMACY CLAUSE OF THE CONSTITUTION AND FEDERAL LAW ...............6

       A.    Teva Has Lawfully Complied with Federal Regulations for Generic Drug
             Manufacturers With Respect to Its Minocycline Product.........................6

             1.    FDA Strictly Regulates the Manufacture and Sale of Brand Name
                   and Generic Prescription Drugs .................................................6

             2.    Federal Regulations Require Generic Drug Manufacturers to
                   Conform the Labeling of its Generic Drug to the Labeling of the
                   Reference-Listed Drug.............................................................9

                   (a)    The "Changes Being Effected" regulation does not provide
                          an exception to the rule mandating conformation of generic
                          drug labeling to that of the reference-listed drug.................10

             3.    Teva Has Complied With FDA's Requirements With Respect to
                   the Labeling of Teva's Minocycline Product................................12

       B.    Plaintiff's State Law Claims Create an Impermissible Conflict With
             Federal Law ...........................................................................13

       C.    Plaintiff's State Law Claims Impermissibly Pose an Obstacle to
             Congressional Objectives in Enacting the Hatch-Waxman Amendments............13

       D.    FDA Regulations Have Broad Preemptive Effect and Mandate Dismissal
             of Plaintiff's State Law Claims...................................................14

CONCLUSION.............................................................................................18

## TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Northwestern Mut. Life Ins. Co.,*
  172 F.3d 467 (7th Cir. 1999) ................................................................................5

*Bell Atlantic Corp. v. Twombley,*
  127 S. Ct. 1955 (2007)........................................................................................2

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984)..........................................................................................14

*Colacicco v. Apotex, Inc.,*
  432 F. Supp. 2d 514 (E.D. Pa. 2006) ................................................................17

*Colacicco v. Apotex, Inc.,*
  No. 06-3107, 2008 WL 927848 (3rd Cir. Apr. 8, 2006)....................................17

*Durst v. Ill. Farmers Ins. Co.,*
  2006 WL 140546 (N.D. Ill. 2006) .......................................................................5

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,*
  458 U.S. 141, 102 S. Ct. 3014 (1982)...............................................................13

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ........................................................................................ 14-15

*In re Bextra and Celebrex Marketing Sales Practices and Products Liab. Litig,*
  2006 WL 2374742 (N.D. Cal. Aug. 16, 2006) ..............................................15, 17

*International Paper Co. v. Ouellette,*
  479 U.S. 481 (1987)..........................................................................................14

*Kirk v. Michael Reese Hosp. & Med. Ctr.,*
  513 N.E.2d 387 (Ill. 1987)..................................................................................4

*Martin v. Occupational Safety and Health Review Commission,*
  499 U.S. 144 (1991) ..........................................................................................15

*Matter of Cajun Elec. Power Co-op., Inc.,*
  109 F.3d 248 (5th Cir. 1997) ............................................................................13

*Medtronic, Inc v. Lohr,*
  518 U.S. 470 (1996)..........................................................................................14

*R.J.R. Services, Inc. v. Aetna Casualty and Surety Co.,*
  895 F.2d 279 (7th Cir. 1989) ..............................................................................2

*Sprietsma v. Mercury Marine,*
    537 U.S. 51 (2002) ................................................................................13

*Uni\*Quality, Inc. v. Infotronx, Inc.,*
    974 F.2d 918 (7th Cir. 1992) ..................................................................5

*Vicom, Inc. v. Harbridge Merchant Servs.,*
    20 F.3d 771 (7th Cir.1994) ................................................................3-4


## STATUTES

21 U.S.C. § 312(p) ......................................................................................7

21 U.S.C. § 321(aa) .....................................................................................8

21 U.S.C. § 355(j) ....................................................................................7-9

35 U.S.C. §§ 156, 271, 281 .........................................................................7

Drug Price Competition and Patent Restoration Act of 1984 (the "Hatch-Waxman
    Amendments") ........................................................................................6

Fed. R. Civ. P. 9(b) ................................................................................2-3, 5

Fed. R. Civ. P. 12(b)(6)................................................................................2

FDCA § 505(j) .........................................................................................8-9

Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq. ................................6

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.* ..........5


## OTHER AUTHORITIES

21 C.F.R. Part 314.......................................................................................7

21 C.F.R. § 314.70(c) ...........................................................................10-11

21 C.F.R. § 314.94(a)(8). ........................................................................8-9

21 C.F.R. § 314.127(a)(7) ...........................................................................9

21 C.F.R. § 314.150(b)(10): .......................................................................10

57 Fed. Reg. at 17957, 17961 ..................................................................8, 12

73 Fed. Reg. at 2849 n.1 (Jan. 16, 2008) .................................................................10

73 Fed. Reg. at 2850 n.3, 2853 (Jan. 16, 2008) .......................................................16

*Abbreviated New Drug Application Regulations, Final Rule,* 57 Fed. Reg. 17950, 17961
    comm. 40 (April 28, 1992). .............................................................................11

Brief for United States as *Amicus Curiae, Colacicco v. Apotex, Inc.,*
    No. 06-3107, at 7-8 (3rd Cir. Dec. 4, 2006)....................................................12

Brief for United States as *Amicus Curiae, Colacicco v. Apotex, Inc.*
    (E.D. Pa. 2006) 432 F. Supp. 2d 514 (Civ. No. 05-CV-05500)........................12, 16

Brief for United States as *Amicus Curiae* on Petition for a Writ of Certiorari, *Wyeth v.*
    *Levine,* No. 06-1249 (U.S. Dec. 21, 2007) .....................................................12, 16

Brief for United States as *Amicus Curiae* Supporting Petitioners, *Warner-Lambert Co.,*
    *LLC v. Kent,* No. 06-1498 (U.S. Nov. 28, 2007) .............................................12, 16

Brief for United States as *Amicus Curiae* Supporting Respondent, *Riegel v. Medtronic,*
    *Inc.,* No. 06-179 (U.S. Oct. 19, 2007)............................................................12, 16

Final Rule On Requirements On the Content and Format of Labeling for Human
    Prescription Drug and Biological Products ........................................................15

H.R. Rep. No. 98-857.........................................................................................8

Letter from Douglas L. Sporn, Director, Office of Generic Drugs, Center for Drug
    Evaluation and Review.....................................................................................12

November 1999 FDA Guidance ........................................................................11-12

Supremacy Clause of the United States Constitution, article VI, clause 2 ....................13

Teva Pharmaceuticals USA, Inc. ("Teva"), through its undersigned counsel, submits this
Memorandum in Support of its Motion to Dismiss Counts I through IV of Plaintiff's Second
Amended Complaint.[1]

## BACKGROUND

This is a products liability action for injuries allegedly suffered by Plaintiff Melanie
Stacel ("Plaintiff") as a result of the use of a prescription pharmaceutical product minocycline
hydrochloride ("minocycline"). Teva is a pharmaceutical company specializing in the
development, production, and marketing of generic and proprietary branded pharmaceuticals.
Teva is one of several companies that manufactures a generic form of minocycline, a tetracycline
antibiotic commonly prescribed to treat bacterial infections, including acne and other skin
infections.

It is alleged in the Second Amended Complaint and, therefore, taken as true for the
purposes of this Motion only, that Plaintiff was prescribed minocycline for the treatment of acute
acne, and that she began taking minocycline in July 2004. (Second Am. Compl. ¶¶ 7-8.)
Plaintiff alleges further that as a result of her use of said drug, she was diagnosed with drug
induced lupus in September 2005. (Second Am. Compl. ¶¶ 11-12.)

Plaintiff asserts four counts against Teva. Count I alleges a cause of action for products
liability based on negligence. Count II alleges a cause of action based on common law fraud and
misrepresentation. Count III alleges a cause of action based on the Illinois Consumer Fraud and

---

[1] On August 2, 2007, Melanie Stacel filed a Complaint against Teva, Teva Pharmaceutical Industries Ltd,
and Walgreen Co. On February 28, 2008, Plaintiff filed an Amended Complaint asserting claims
against only Teva. On March 28, 2008, Plaintiff filed a Second Amended Complaint asserting claims
against Teva. (Teva Pharmaceutical Industries Ltd. has never been served in this action, and has not
been named in the Amended Complaint or the Second Amended Complaint. Plaintiff voluntarily
dismissed Walgreen Co. on February 19, 2008.)

1

Deceptive Business Practices Act ("Illinois Consumer Fraud Act").[2]  For the reasons set forth

below, all of Plaintiff's claims fail, and the Second Amended Complaint should be dismissed in

its entirety.

## ARGUMENT

On a motion to dismiss, the court accepts as true all well-pleaded factual allegations.  If

the complaint fails to state a claim upon which relief can be granted, the court should dismiss the

case.  *See* Fed. R. Civ. P. 12(b)(6); *R.J.R. Services, Inc. v. Aetna Casualty and Surety Co.*, 895

F.2d 279, 280-81 (7th Cir. 1989).  To survive a Rule 12(b)(6) motion to dismiss, it is not enough

that there might be some conceivable set of facts that entitles the plaintiff to relief.  *Bell Atlantic

Corp. v. Twombley*, 127 S. Ct. 1955, 1968-69 (2007).  Instead, "[f]actual allegations must be

enough to raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true."  *Id.* at 1964-65 (internal quotations omitted).  Even assuming

all well-pleaded facts as true (which Teva does not concede), Plaintiff's Second Amended

Complaint fails to state a claim on which relief can be granted for the following reasons:

*First*, Counts II and III fail to properly plead the asserted causes of action based on

common law fraud and the Illinois Consumer Fraud Act, respectively.  Because both Counts

involve allegations of fraud, they are subject to a heightened pleading standard for fraud claims

imposed by Fed. R. Civ. P. 9(b), pursuant to which Plaintiff must set forth *with particularity* all

circumstances constituting the alleged fraudulent conduct.  The Second Amended Complaint

does not even come close to pleading these claims with sufficient particularity.  Plaintiff does not

identify the content of any alleged false statements made by Teva, the time or place when such

---

[2] Count IV asserts a claim for punitive damages, which is contingent on the preceding three counts, and
must fail if they do.

statements were allegedly made, or the method in which such statements were allegedly made.

Plaintiff also fails to identify the particular federal and FDA regulations that Teva allegedly

disregarded and the ways in which Teva failed to comply. Accordingly, Plaintiff's claims

asserted in Counts II and III fail.

*Second*, Plaintiff's state law claims are preempted by the Supremacy Clause of the

United States Constitution and by federal law. Federal regulations require that Teva's generic

drug minocycline have the same labeling as its reference-listed drug, Minocin®, thus dictating

the precise labeling that had to appear on the product that Plaintiff allegedly ingested. Federal

regulations further prohibit Teva from making any changes to the labeling under threat of

removal of its product from the market. As such, Teva cannot be held liable under state law for

complying with mandatory federal statutory and regulatory law.

For these reasons, Plaintiff's Second Amended Complaint should be dismissed.

## I.    PLAINTIFF'S COMMON LAW FRAUD AND MISREPRESENTATION CLAIMS FAIL DUE TO INADEQUATE PLEADING UNDER FED. R. CIV. P. 9(b)

Count II of Plaintiff's Second Amended Complaint, which asserts common law fraud and

misrepresentation claims against Teva, must be dismissed because it contains nothing more than

conclusory, vague allegations supported by no specific facts or evidence. Fraud claims must

meet the heightened pleading standard set forth in Fed. R. Civ. P. 9(b), which obligates Plaintiff

to state *with particularity* the circumstances constituting fraud. This Circuit has affirmed that

"[t]he liberal notice-pleading standard does not apply to claims of fraud; such claims of fraud are

subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Vicom,*

*Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 777 (7th Cir.1994). Specifically, a pleading

asserting a claim of fraud or misrepresentation must spell out (1) the identity of the person or

entity that made the misrepresentation; (2) the time, place, and content of the misrepresentation;

3

and (3) the method by which the misrepresentation was communicated. *Id.* In the instant case, Plaintiff's claims of fraud and misrepresentation fail to meet this heightened standard.

First, Plaintiff fails to set forth with sufficient particularity the misrepresentations or false statements of material fact allegedly made by Teva. Plaintiff posits that Teva made false statements by concealing Teva's "full knowledge" of reported cases in which its minocycline drug was reported to have caused what is commonly known as lupus. (Second Am. Compl. ¶¶ 25-26.) However, Plaintiff fails to allege any specific basis for concluding that Teva had any such knowledge concerning its drug.

Second, Plaintiff fails to identify the time, place, content, or method by which Teva allegedly made such false statements to Plaintiff, Plaintiff's physicians, the public, or FDA. (Second Am. Compl. ¶¶ 26-27.)[3] Although Plaintiff claims that Teva made false statements and misrepresentations in the labeling for its minocycline product, Plaintiff fails to attach a copy to her Second Amended Complaint or to identify the purported "fraudulent" language.

Finally, while Plaintiff claims that Teva made false statements to FDA in failing to provide FDA with information concerning cases of drug induced lupus, and in failing to ask FDA to supplement the minocycline label, Plaintiff sets forth no specific facts to support her serious accusation that Teva has not complied with FDA regulations in connection with the reporting of adverse events for its minocycline drug.

---

[3] Furthermore, under Illinois law, a prescription drug manufacturer, such as Teva, has no duty to provide warnings of any adverse effects associated with a drug directly to the consumer, such as Plaintiff – Teva's duty is to provide warnings to the prescribing physician only. *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 393 (Ill. 1987).

In sum, Plaintiff has fallen far short of alleging with sufficient particularity the circumstances constituting the basis for her fraud and misrepresentation claims. For these reasons, Count II of the Second Amended Complaint should be dismissed.

**II.    PLAINTIFF'S CLAIMS UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ALSO FAIL DUE TO INADEQUATE PLEADING UNDER FED. R. CIV. P. 9(b)**

Count III of Plaintiff's Second Amended Complaint, which alleges claims under the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*, must also be dismissed due to Plaintiff's failure to plead these claims with sufficient particularity. The elements for a claim under the Illinois Consumer Fraud Act include: "1) a deceptive act or practice by [the defendant], 2) [the defendant's] intent that [the plaintiff] rely on the deception, . . . 3) that the deception occurred in the course of conduct involving trade and commerce [and 4)] that the deceptive act proximately caused [the plaintiff's] injury." *Durst v. Ill. Farmers Ins. Co.*, 2006 WL 140546, at *3 (N.D. Ill. 2006). Any claim brought in federal court under the Illinois Consumer Fraud Act must be pled ***with particularity*** pursuant to Fed. R. Civ. P. 9(b). *Id.*; *see also Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) ("Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud, which sometimes it does and sometimes it does not.") As stated *supra*, pleading with particularity means that Plaintiff must set forth the "who, what, when, and where" of the alleged fraud. *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Plaintiff's allegations in Count III suffer from the same weaknesses described above with respect to Count II – Plaintiff does not provide the basis for her conclusion that Teva concealed information about its minocycline drug, and does not identify the time, place, content, or method by which Teva allegedly concealed this information. Similarly, in alleging that Teva failed to

provide adequate warnings of drug induced lupus, Plaintiff again does not specifically identify

the purportedly deceptive language.  Plaintiff repeats her allegations that Teva acted deceptively

by failing to comply with various regulatory requirements and FDA procedures in relation to its

minocycline drug.  (Second Am. Compl. ¶ 34.)  However, Plaintiff again fails to plead *any*

specific detail constituting the purported basis of her claims that Teva did not properly report

adverse events to FDA or the Adverse Event Reporting System.  Nor does Plaintiff specify how

Teva allegedly failed to follow FDA procedures concerning product letters of approval.

      For these reasons, Count III of the Second Amended Complaint should be dismissed.

## III.  PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE SUPREMACY CLAUSE OF THE CONSTITUTION AND FEDERAL LAW

      Teva lawfully complied with federal law and regulations in securing the right to sell

minocycline for the indications approved by FDA, with the required FDA-approved labeling.

Under the doctrine of federal preemption pursuant to the Supremacy Clause of the United States

Constitution and federal law, Teva cannot be held liable under state law for complying with

federal statutory and regulatory law.

### A.  Teva Has Lawfully Complied with Federal Regulations for Generic Drug Manufacturers With Respect to Its Minocycline Product

#### 1.  FDA Strictly Regulates the Manufacture and Sale of Brand Name and Generic Prescription Drugs

      The manufacture and sale of prescription drug products in the United States is a highly

regulated industry, under the jurisdiction of FDA.  FDA draws its statutory authority as to the

approval of such manufacture and sale of drugs primarily from its enabling statute, the Food,

Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., as amended by the Drug Price Competition and

Patent Restoration Act of 1984 (the "Hatch-Waxman Amendments") (collectively, the "Food and

Drug Act" or "FDCA"), and has promulgated regulations implementing such statutes, which may

be found in pertinent part at 21 C.F.R. Part 314.

Broadly speaking, under the United States' regulatory scheme, prescription drugs fall into

two categories, new or branded drugs and generic drugs. A new drug is one that has not yet been

established or generally recognized by persons with relevant scientific training as safe and

effective for the purposes or medical indications for which its use is intended. 21 U.S.C. §

312(p). The right to manufacture and market such a drug in the United States is secured through

the filing of a New Drug Application ("NDA"). In order to obtain approval of an NDA, the

applicant must demonstrate the safety and efficacy of the drug for its intended indications to the

satisfaction of FDA, typically through the conduct of extensive clinical trials in humans. The

research and development of such drugs and the conduct of the requisite clinical trials is often a

costly process, which takes years to complete. For that reason, among others, NDA drugs, which

are sold under proprietary brand names, are often very expensive.

In the public policy interest of fostering competition, and promoting the availability of

lower cost medical care and affordable prescription drugs, Congress and FDA enacted statutory

provisions and regulations to encourage the manufacture and marketing of the other category of

drugs, known as generic drugs. Specifically, the Hatch-Waxman Amendments (codified at 21

U.S.C. § 355(j), 35 U.S.C. §§ 156, 271, 281), established the current procedure for obtaining

approval from FDA to market and sell a generic drug, allowing the generic maker to submit an

abbreviated NDA ("ANDA"). The ANDA applicant need only demonstrate that the generic

manufacturer will produce a drug product that is bioequivalent to its brand name counterpart, the

so-called "reference-listed drug", and that the labeling and warnings of the generic drug are

identical to that of the approved reference-listed drug. 21 U.S.C. § 355(j)(2)(A).

The requirements that a generic manufacturer must meet under the ANDA process are set forth in Section 505(j) of the Food and Drug Act, 21 U.S.C. § 355(j). Specifically, the process begins with a requirement that the information not be new or innovative, but rather wholly derivative of information already provided by the innovator manufacturer. *See* § 321(aa) (ANDA must "rel[y] on the approved application of another drug with the same active ingredient to establish safety and efficacy.") Under subsection 505(j)(2)(A), an ANDA must show:

- the conditions of use on the proposed labeling for the generic drug are the same as those approved for the listed drug [§ 505(j)(2)(A)(i)], excepting only indications covered by a patent or subject to exclusivity protection under FDCA § 505(j)(5)(D). *See* 21 C.F.R. § 314.94(a)(8)(iv); *see also* 57 Fed. Reg. at 17,961.

- the active ingredient is the same as that of the listed drug [§ 505(j)(2)(A)(ii)].

- the route of administration, dosage form, and strength are the same as those of the listed drug [§ 505(j)(2)(A)(iii)].

- the generic drug is bioequivalent to (i.e., can be expected to have the same therapeutic effect as the listed drug) [§ 505(j)(2)(A)(iv)].

H.R. Rep. No. 98-857, at 21-22.

Thus, an ANDA applicant is not required or expected to conduct clinical trials to establish the safety and efficacy of its drug. The Food and Drug Act and FDA's regulatory scheme contemplate that safety and efficacy will have been established by the pharmaceutical company who originally submitted the NDA for the reference listed drug. In contrast, the generic manufacturer is obliged only to conduct so-called "bioequivalency" studies, to establish that its dosage formulation of the generic product has the same pharmacological action in the human body as does the reference listed drug. It is this avoidance of the need for time-consuming and costly clinical trials that permits generic drugs to be brought to market quickly and at less expense.

2.    Federal Regulations Require Generic Drug Manufacturers to Conform the
      Labeling of its Generic Drug to the Labeling of the Reference-Listed Drug

The flip side of the regulatory framework permitting an abbreviated approval process for

generic drug manufacturers is that the labeling, *i.e.* the prescribing information or package insert

of the generic drug, may not deviate in any material respect from that of its reference-listed drug.

Federal law requires that, but for differences relating to the fact of the product being

manufactured by a different company, chiefly physical description, inactive ingredients, and

omitted indications, the generic manufacturer's labeling, including all statements as to warnings,

precautions, contraindications, and adverse reactions, must adhere letter for letter to the language

in the corresponding provisions of the labeling of the reference-listed drug.  *See* Section 505(j) of

the Food and Drug Act, 21 U.S.C. § 355(j)(2)(A)(v), which requires an ANDA applicant to

submit to FDA,

> information to show that *the labeling proposed for the new drug is
> the same as the labeling approved for the listed drug* referred to in
> clause (i) except for changes required because . . . the new drug
> and the listed drug are produced or distributed by different
> manufacturers.

(emphasis added.)[4]  Accordingly, for generic drug manufacturers, such as Teva, the use of label

language as to warnings, precautions, contraindications, and adverse reactions prescribed by

FDA in its regulatory capacity is *mandatory, i.e.* language from which the manufacturer *may not

deviate.*

---

[4] *See also* 21 C.F.R. § 314.94(a)(8)(i) (generic drug manufacturer must provide a copy of the currently
approved labeling for the reference-listed drug); 21 C.F.R. § 314.94(a)(8)(iv) (generic manufacturer
must submit side-by-side comparison of its proposed labeling with the approved labeling for the
reference-listed drug, with all differences annotated and explained; no differences permitted, except as
enumerated therein); 21 C.F.R. § 314.127(a)(7) (FDA will refuse to approve an ANDA if information
submitted is "insufficient to show that the labeling proposed for the drug is the same as the labeling
approved for the listed drug").

Case 1:08-cv-01143    Document 23    Filed 05/02/2008    Page 15 of 23

(a)    The "Changes Being Effected" regulation does not provide an exception to the rule mandating conformation of generic drug labeling to that of the reference-listed drug

At all times throughout the life of the product, the generic label must be maintained in conformity with that of the reference-listed drug, on pain of withdrawal of approval of the ANDA.[5] While it has sometimes been argued that an ANDA holder has a right to enhance warnings through the mechanism of 21 C.F.R. § 314.70(c)(6)(iii)(A), the so-called "Changes Being Effected" ("CBE") provision, FDA recently reaffirmed that this is an improper interpretation of its regulations. In the January 16, 2008 Federal Register, FDA published proposed amendments to its rules governing changes to approved labeling, wherein FDA unambiguously stated:

> CBE changes are not available for generic drugs approved under an abbreviated new drug application under 21 U.S.C. 355(i). To the contrary, a generic drug manufacturer is required to conform to the approved labeling for the listed drug. *See* 21 CFR 314.150(b)(10); *see also* 57 FR 17950, 17953, and 17961.

73 Fed. Reg. at 2849 n.1 (Jan. 16, 2008).[6]

This is not a new interpretation of FDA regulations. Rather, this proposed rulemaking expressly is meant to codify FDA's long-standing position that under 21 C.F.R. § 314.70(c), *no labeling changes can be made unilaterally by a generic manufacturer. Id.* at 2852. On the occasion of the publication of the Final Rulemaking on ANDA Regulations in 1992, FDA clearly rejected any notion that the CBE regulation applies to generic drug manufacturers: "[a]fter approval of an

---

[5] *See, e. g.,* 21 C.F.R. § 314.150(b)(10): "FDA may notify the applicant . . . [that it will] . . . withdraw approval of the application or abbreviated new drug application . . . if the agency finds . . . [t]hat the labeling for the drug product that is the subject of the abbreviated new drug application is no longer consistent with that for the listed drug."

[6] Attached hereto as Exhibit A.

ANDA, if an ANDA holder believes that new safety information should be added, it should

provide adequate supporting information to FDA, and FDA will determine whether the labeling for

the generic and listed drugs should be revised." *Abbreviated New Drug Application Regulations,*

*Final Rule,* 57 Fed. Reg. 17950, 17961 comm. 40 (April 28, 1992).[7]  FDA also expressly rejected

public requests that ANDA applicants be allowed unilaterally to change or deviate from the

labeling of the innovator drug to add contraindications, warnings, precautions, adverse reactions,

and other safety related information:

> Two comments said the labeling provisions should be revised to permit
> ANDA applicants to deviate from the labeling for the reference listed drug
> to add contraindications, warnings, precautions, adverse reactions, and
> other safety-related information.
> \* \* \*
> *FDA disagrees with the comments.  Except for labeling differences due to*
> *exclusivity or a patent and differences under section 505(j)(2)(v) of the*
> *[Food and Drug Act], the ANDA product's labeling must be the same as*
> *the listed drug product's labeling because the listed drug product is the*
> *basis for ANDA approval.*

*Id.* (emphasis added).

This long-held position is made even more abundantly clear by the admonishment in the

November 1999 FDA Guidance[8] and the April 2004 Revision I to that Guidance that "[a]ll labeling

changes for ANDA products must be consistent with § 505(j) of the Act," (FDA Guidances at 24),

*i.e.,* must conform exactly to the labeling of the reference-listed drug.  Further, FDA in a December

24, 1996 letter cautioned ANDA holders that they cannot adopt innovator labeling that has been

unilaterally revised by the innovator through the mechanism of 21 C.F.R. § 314.70(c), unless and until

such revised innovator drug labeling has been affirmatively approved by the agency.  The letter stated

that "[t]he FDA must still review, possibly recommend changes and approve the [revised innovator

---

[7] Attached hereto as Exhibit B.
[8] Attached hereto as Exhibit C.

11

drug] labeling before it is acceptable for use as model labeling for an [ANDA] product." Letter

from Douglas L. Sporn, Director, Office of Generic Drugs, Center for Drug Evaluation and Review

at 8.[9] *See also* 57 Fed. Reg. at 17957, 17961; FDA Guidance at 24.

In addition to rulemakings and guidances, FDA has taken the same position in various

*amicus curiae* briefs. As recently as December 21, 2007, FDA submitted an *amicus curiae* brief

at the invitation of the United States Supreme Court, in which the agency explained that "[u]nder

a correct reading of Section 314.70, [the generic drug manufacturer] could not have changed the

labeling without prior FDA approval." Brief for United States as *Amicus Curiae* on Petition for

a Writ of Certiorari, *Wyeth v. Levine*, No. 06-1249 (U.S. Dec. 21, 2007).[10]

3.    Teva Has Complied With FDA's Requirements With Respect to the
      Labeling of Teva's Minocycline Product

In or about 1992, Teva first received approval of an ANDA for minocycline, a generic

version of the reference-listed drug Minocin®. In compliance with federal regulations discussed

*supra*, Teva conducted tests demonstrating to FDA that its minocycline product was

bioequivalent to Minocin®. Teva conformed its minocycline labeling in all material respects,

---

[9] Attached hereto as Exhibit D.

[10] Attached hereto as Exhibit E. FDA has asserted the same position in other recent *amicus* briefs to the
Supreme Court. *See* Brief for United States as *Amicus Curiae* Supporting Respondent, *Riegel v.
Medtronic, Inc.*, No. 06-179 (U.S. Oct. 19, 2007) (attached hereto as Ex. F); Brief for United States as
*Amicus Curiae* Supporting Petitioners, *Warner-Lambert Co., LLC v. Kent*, No. 06-1498 (U.S. Nov. 28,
2007) (attached hereto as Ex. G). Similarly, in December 2006, FDA filed an *amicus* brief to the Third
Circuit, in which it again squarely addressed this issue:

> For a generic drug manufacturer, there is no statutory or regulatory provision permitting a
> labeling change to be made without prior FDA approval. To the contrary, a generic drug
> manufacturer is required to conform to the approved labeling for the listed drug. *See* 21
> C.F.R. § 314.150(b)(10); *see also* 57 Fed. Reg. 17,950, 17953, 17,961 (1992). If a
> generic drug manufacturer believes that new safety information should be added to the
> label for its drug, it is directed to contact FDA with "adequate supporting information."

Brief for United States as *Amicus Curiae, Colacicco v. Apotex, Inc.*, No. 06-3107, at 7-8 (3rd Cir. Dec. 4,
2006) (attached hereto as Ex. H). *See also* Brief for United States as *Amicus Curiae, Colacicco v. Apotex,
Inc.* (E.D. Pa. 2006) 432 F.Supp.2d 514 (Civ. No. 05-CV-05500) (attached hereto as Ex. I).

including Warnings and listed Adverse Reactions, to FDA-approved label for Minocin®. Any deviation from Minocin's® FDA-approved label would have rendered Teva's product misbranded, unapprovable, and unsaleable in the United States.

**B.    Plaintiff's State Law Claims Create an Impermissible Conflict With Federal Law**

Plaintiff's state law claims alleging that Teva failed to provide adequate warnings and instructions in the marketing of its minocycline product create an impermissible conflict because they seek to hold Teva liable for complying with federal law. Accordingly, Plaintiff's state law claims are preempted and should be dismissed.

The Supremacy Clause of the United States Constitution, article VI, clause 2, preempts any state law that conflicts with the exercise of federal power. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S. Ct. 3014 (1982). "Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Matter of Cajun Elec. Power Co-op., Inc.*, 109 F.3d 248, 253-54 (5th Cir. 1997) (*citing Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). This so-called conflict-preemption occurs where "[a] state common-law claim directly conflict[s] with a federal regulation . . . or if it [is] impossible to comply with any such regulation without incurring liability under state common law." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002). Where FDA has specifically stated that a generic drug manufacturer may not vary its drug label from that of the reference-listed drug, and that such a variation justifies withdrawal of ANDA approval, Plaintiff's state law claims requiring Teva to do just that make it impossible for Teva to comply with both federal and state law. As such, Plaintiff's claims are preempted.

**C.    Plaintiff's State Law Claims Impermissibly Pose an Obstacle to Congressional Objectives in Enacting the Hatch-Waxman Amendments**

In addition to the actual conflict between Plaintiff's state law claims and federal law, Plaintiff's claims also impermissibly "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). "A state law claim . . . is preempted if it interferes with the methods by which the federal statute was designed to reach [its] goals." *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).

Plaintiff's state law claims stand as an "obstacle" to the purposes and objectives of Congress in that these claims seek to impose a duty on generic drug manufacturers, such as Teva, to continually develop and strengthen warning labels, undermining a key purpose of the Hatch-Waxman Amendments – to promote competition from generic drugs by *relaxing* the generic drug approval and labeling process. Under the Hatch-Waxman Amendments, Teva is required to maintain the language of its minocycline labeling identical to the reference-listed Minocin® drug. Thus, any attempt to impose a duty on Teva to include a different warning on its minocycline labeling from the labeling of Minocin® stands as an obstacle to Congress' objectives in enacting the Hatch-Waxman Amendments and the FDCA's implementing regulations. Accordingly, Plaintiff's state law claims are preempted and should be dismissed.

**D.    FDA Regulations Have Broad Preemptive Effect and Mandate Dismissal of Plaintiff's State Law Claims**

Both FDA's own interpretation of its regulations and interpretive case law instruct that FDA regulations have broad preemptive effect. The Supreme Court has repeatedly recognized that in the absence of clearly expressed Congressional intent (which is absent here), FDA's position on the preemptive scope of its regulatory authority is *dispositive* so long as it is based on a permissible construction of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Medtronic, Inc v. Lohr.*, 518 U.S. 470, 496 (1996) ("[t]he

14

agency is uniquely qualified to determine whether a particular form of state law 'stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress,

and, therefore, whether it should be preempted'") (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67

(1941)). The same deference applies to "an agency's [reasonable] construction of its own

regulations." *Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 150

(1991). "Congress has delegated the responsibility for administering the FDCA to FDA; such

responsibility implies the authority and expertise to determine which state laws conflict with its

regulations." *In re Bextra and Celebrex Marketing Sales Practices and Products Liab. Litig*,

2006 WL 2374742, at *7 (N.D. Cal. Aug. 16, 2006).

      FDA has directly addressed preemption in products liability cases, and has decisively

confirmed that its regulations have broad preemptive effect. In January 2006, the agency issued a

new Final Rule On Requirements On the Content and Format of Labeling for Human Prescription

Drug and Biological Products ("Final Rule on Labeling")[11], wherein it argues that it interprets the

Food and Drug Act and its own regulatory scheme thereunder to establish both a floor and a

ceiling for the disclosure of risk information. FDA states that it carefully controls the content of

drug labeling as its principal tool for educating health care professionals about the risks and

benefits of approved products, and notes that requirements of additional disclosures are not

necessarily protective of patients, but may erode and disrupt the careful representations of those

risks and benefits. The agency concludes that state law conflicts with and stands as an obstacle to

the achievement of the full objectives and purposes of federal law if it purports either to compel

---

[11] Comment 13, the relevant portion of this extensive document, is attached hereto as Exhibit J.

the inclusion of warning language the agency has considered and found scientifically

unsubstantiated or to preclude the inclusion of language the agency has deemed appropriate.

FDA reaffirmed this position in its January 16, 2008 proposed amendments to its rules,

stating unequivocally:

> Federal Law governs not only what information must appear in labeling,
> but also what information may not appear.
>
> * * *
>
> To the extent that state law would require a sponsor to add information to
> the labeling for an approved drug . . . without advance FDA approval
> based on information or data as to risks that are similar in type or severity
> to those previously submitted to FDA, or based on information or data that
> does not provide sufficient evidence of a causal association with the
> product, such a state requirement would conflict with federal law.

73 Fed. Reg. at 2850 n.3, 2853 (Jan. 16, 2008).[12]

FDA's expansive view of its preemptive authority is entitled to deference. However, one

need not go nearly as far as does the agency to conclude that preemption is appropriate as to

*generic* labeling, where the ANDA holder literally has no freedom of action with respect to label

content. In fact, on May 25, 2006, the *Colacicco* district court accepted the arguments urged by

---

[12] In addition to the recent rulemaking, FDA has taken the same position in recent *amicus curiae* briefs, stating unequivocally: "FDA's approval of a drug, including its labeling, generally preempts state law claims challenging the drug's safety, efficacy, or labeling." Brief for United States as *Amicus Curiae* on Petition for a Writ of Certiorari, *Wyeth v. Levine*, No. 06-1249 (U.S. Dec. 21, 2007). The Solicitor General explained:

> FDA interprets the FDCA to establish both a 'floor' and a 'ceiling' with respect to drug
> labeling. FDA's approval of labeling for a new drug reflects FDA's expert judgment
> that the labeling strikes the appropriate balance. Where . . . FDA was presented with
> information concerning the relevant risk, a jury's imposition of liability based on a drug's
> FDA-approved labeling would interfere with FDA's expert judgment.

*Id.* (citation omitted). *See also* Brief for United States as *Amicus Curiae* Supporting Respondent, *Riegel v. Medtronic, Inc.*, No. 06-179 (U.S. Oct. 19, 2007); Brief for United States as *Amicus Curiae* Supporting Petitioners, *Warner-Lambert Co., LLC v. Kent*, No. 06-1498 (U.S. Nov. 28, 2007); Brief for United States as *Amicus Curiae, Colacicco v. Apotex, Inc.* (E.D. Pa. 2006) 432 F. Supp. 2d 514 (Civ. No. 05-CV-05500).

FDA and granted summary judgment to defendant, generic drug manufacturer Apotex:

> Accordingly, we find that state tort law which would hold a
> generic drug manufacturer liable for failing to modify a label
> when, pursuant to the Hatch-Waxman Amendments to the FDCA,
> the ANDA approval process required that the labeling be the same
> as that approved for the innovator drug, and when the FDA would
> have deemed any post-approval enhancements "false or
> misleading," would actually conflict with the FDCA. For these
> reasons, as well as our conclusion that we must afford deference to
> the FDA's position that the claims are preempted, we find that
> Plaintiff's failure-to-warn claims are impliedly preempted.

432 F. Supp. 2d at 537-38.[13]

Inescapably, Teva was disabled by federal law and regulations from varying the

mandated label language of its minocycline product, and cannot be held liable under state law for

not doing so. Insofar as Teva's alleged liability under any asserted claim for relief is premised,

wholly or in part, on its compliance with the Food and Drug Act or any FDA regulations

promulgated thereunder, with respect to the content of the labeling of Teva's minocycline

product, such claims are preempted and should be dismissed. This is true whether such claims

are clothed in the guise of negligence, fraud, or misrepresentation.

---

[13] On April 8, 2008, the Third Circuit rendered its decision, upholding the *Colacicco* district court's
ruling that the appellant's state law claims are preempted by federal law. *Colacicco v. Apotex, Inc.*, No.
06-3107, 2008 WL 927848 (3rd Cir. Apr. 8, 2006) (attached hereto as Ex. K). Because the Third
Circuit's holding rested on FDA's direct rejection of the warning proffered by the appellant, the court did
not reach the broader issue of "generic" preemption addressed by the lower court. *See also In re Bextra*,
*supra*, at *7, in which the court held that FDA's claims of preemption in the January 2006 Final Rule on
Labeling are entitled to deference:

> [T]he FDA is the agency charged with administering the FDCA and striking a
> "somewhat delicate balance" among its statutory objectives. . . . The FDA is in a
> better position than the Court to determine whether state laws that encourage
> manufacturers to propose defensive labels upset the FDA's careful balance of
> statutory objectives.

(citation omitted). This Court need not go as far as the expansive *In re Bextra* view of preemption to
conclude in this case, as did the *Colacicco* district court, that the claims against Teva ineluctably conflict
with FDA authority and regulation.

17

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint should be dismissed.

Date: May 2, 2008

TEVA PHARMACEUTICALS USA, INC.

By: ___/s/ Ameri R. Giannotti_____
One of Its Attorneys

Glenn S. Kerner
Joanne Gray
Yuliya Gertsberg
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800 (Telephone)
(212) 355-3333 (Facsimile)
gkerner@goodwinprocter.com
jgray@goodwinprocter.com
ygertsberg@goodwinprocter.com

Pamela R. Hanebutt
Ameri R. Giannotti
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL  60604
(312) 660-7600 (Telephone)
(312) 692-1718 (Facsimile)
phanebutt@eimerstahl.com
agiannotti@eimerstahl.com

*Attorneys for Defendant
Teva Pharmaceuticals USA, Inc.*